# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF DURHAM, NORTH CAROLINA,<br><br>Defendant. | Civil Action No.: 24-cv-838 |

## COMPLAINT

Plaintiff, the United States of America ("United States"), alleges:

1. This action is brought on behalf of the United States to enforce Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). As set forth more fully below, the United States alleges that the City of Durham, North Carolina ("Durham"), through the Durham Fire Department ("DFD") (collectively referred to as "Defendant"), has used and continues to use a written test, the Comprehensive Examination Battery ("CEB"), to screen and select applicants for entry-level firefighter positions at DFD. Defendant's uses of the CEB have disproportionately excluded African-American applicants from employment in these positions, and Defendant's uses of the CEB are not job-related or consistent with business necessity. Through the use of the CEB, Defendant has engaged in a pattern or practice of employment discrimination

against African Americans in its selection procedure for entry-level firefighter positions in violation of Title VII.

2. All conditions precedent to the filing of suit have been satisfied.

## JURISDICTION AND VENUE

3. This Court has jurisdiction of this action under 42 U.S.C. § 2000e-6(b) and 28 U.S.C. §§ 1331, 1343(a)(3), and 1345.

4. Venue is proper in the United States District Court for the Middle District of North Carolina pursuant to 28 U.S.C. § 1391 because Defendant is located in this judicial district and all or a substantial part of the acts or omissions giving rise to this cause of action took place in this judicial district.

## PARTIES

5. Plaintiff is the United States of America.

6. Durham is a governmental entity and/or political subdivision created pursuant to the laws of the state of North Carolina.

7. Durham is a "person" within the meaning of 42 U.S.C. § 2000e(a) and an "employer" within the meaning of 42 U.S.C. § 2000e(b).

8. The United States, through the United States Department of Justice, conducted an investigation of the policies and practices of Defendant with respect to its screening and selection of applicants for the entry-level firefighter position at DFD and the discriminatory effect of such practices on African-American applicants. The

2

Department of Justice notified Defendant of that investigation and of the United States' determination.

## FACTUAL ALLEGATIONS

### A. *DFD's Entry-Level Firefighter Selection Process*

9. Durham oversees all municipal agencies within the city, including DFD. Through DFD, Durham employs firefighters who, among other things, are responsible for providing fire prevention, emergency response, rescue, and hazardous materials services in Durham.

10. Defendant is responsible for the recruitment and hiring of DFD entry-level firefighters.

11. Defendant is responsible for establishing the terms, conditions, and other practices that bear upon the selection and employment of DFD entry-level firefighters.

12. Since at least 2015, DFD has used a multi-step selection process to select entry-level firefighters. Among other screening devices, this multi-step selection process has included the use of scores from a written test.

13. At the outset of the selection process, Defendant screens all applicants. Those applicants who fail to meet a set of minimum qualifications do not advance further in the multi-step selection process and are not hired as DFD entry-level firefighters.

14. To advance in the selection process after meeting the minimum qualifications, applicants for DFD's entry-level firefighter positions must successfully obtain a passing score on a multiple-choice written test. Applicants who do not pass the

3

test do not advance further in the multi-step selection process and are not hired as DFD entry-level firefighters.

15. DFD conducts in-person interviews of applicants during the multi-step selection process. To reach the in-person interview step of the selection process, an applicant must first obtain a passing score on the written test.

### B. *The Challenged Employment Practices*

16. Since October 2015, Defendant has administered and used the CEB, which was developed by Fire and Police Selection, Inc. ("FPSI"), a consulting firm that, among other things, provides firefighter testing products to screen applicants for entry-level firefighter positions. The CEB consists of five sections: reading (15 questions), math (20 questions), writing (20 questions), map reading (15 questions), and interpersonal competency/human relations (30 questions). All 100 questions are multiple choice.

17. From 2015 to 2017, the written test included an additional section called the Practical Skills Test ("PST"), also developed by FPSI. The PST purports to measure reasoning skills and consists of 28 multiple-choice questions.

18. Since 2019, the written test has not included the PST, and the CEB has constituted the entire written test administered to applicants.

#### 1. *The Pass/Fail Use of the Written Test*

19. Since 2015, applicants for entry-level firefighter positions who have scored less than 70% on the written test have not advanced further in Defendant's multi-step selection process.

4

### 2. *The Ranking Use of the Written Test*

20. Since 2015, Defendant has ranked applicants for entry-level firefighter positions who are eligible for an interview in the order of their overall numerical scores on the written test. Defendant aimed to interview five times the number of applicants as the number of entry-level firefighters it sought to hire. In hiring cycles for which there were more eligible applicants than interview slots available, Defendant used the rank to determine who was invited to interview. Applicants who did not receive an invitation to interview did not advance further in Defendant's multi-step selection process.

### C. Adverse Impact

#### 1. *The Pass/Fail Use of the CEB*

21. Since 2015, African-American applicants who took the written test ("test-takers") failed the written test at a higher rate than white test-takers. Approximately 37% of African-American test-takers failed the written test, and approximately 11% of white test-takers failed.

22. During this time period, the difference between the pass rates of African-American and white test-takers on the written test is statistically significant, with a standard deviation of more than three units.

23. This disparity in pass rates between African-American and white test-takers on the written test was caused by Defendant's use of the CEB.

### 2. The Ranking Use of the CEB

24. Since 2015, as a result of DFD's use of applicants' written test scores to rank them for interviews, African-American applicants who passed the written test were invited for in-person interviews at a lower rate than white applicants who passed the written test. Approximately 32% of African-American applicants who were eligible for an interview failed to receive an invitation to interview, and approximately 14% of white applicants who were eligible for an interview failed to receive an invitation.

25. During this time period, the difference between the rates of African-American and white applicants who were invited for in-person interviews is statistically significant, with a standard deviation of more than three units.

26. This disparity in the rates that African-American and white applicants were invited for interviews was caused by Defendant's use of the CEB.

### D. Job-Relatedness, Consistency with Business Necessity, and Less Discriminatory Alternatives

27. The CEB and the methods in which Defendant has used the CEB are not job related and consistent with business necessity. As such, Defendant's uses of the CEB during (i) the pass/fail testing step of the selection process and (ii) the step of the selection process when Defendant rank-orders applicants for interviews are both not job related for the DFD entry-level firefighter position, not consistent with business necessity, and do not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

28. Even if Defendant could demonstrate that its uses of the CEB were job related and consistent with business necessity, there have been alternative selection procedures that it could have used that would have resulted in less adverse impact against African-American applicants and still served Defendant's legitimate needs.

29. As a result of Defendant's uses of the CEB, Defendant has hired at least sixteen (16) fewer African-American applicants as entry-level firefighters since 2015 than it otherwise would have had it used a non-discriminatory screening device.

## UNITED STATES' PATTERN OR PRACTICE CLAIMS PURSUANT TO SECTION 707 OF TITLE VII

30. Plaintiff United States re-alleges and incorporates by reference paragraphs 1 through 29.

31. Defendant's use of the CEB during the pass/fail screening step of its selection process results in a disparate impact on African-American applicants for entry-level firefighter positions at DFD, is not job related for the position in question, is not consistent with business necessity, and otherwise does not meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

32. Defendant's use of the CEB during the step of the selection process when it rank-orders applicants for interviews results in a disparate impact on African-American applicants for entry-level firefighter positions at DFD, is not job related for the position in question, is not consistent with business necessity, and otherwise does not meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

33. Even if Defendant could show that its uses of the CEB are job related and consistent with business necessity, Defendant violated 42 U.S.C. § 2000e-2(k) because there were alternative selection procedures that it could have used that would have resulted in less adverse impact against African-American applicants and still served DFD's legitimate needs.

34. The policies and practices of Defendant outlined in paragraphs 9 through 29 constitute a pattern or practice of resistance to the full enjoyment by African Americans of the rights protected by Title VII.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States prays that the Court order the City of Durham, and its officers, agents, employees, successors, and all persons in active concert or participation with them, including DFD to:

    a.    refrain from using written tests to screen and select applicants for DFD entry-level firefighter positions where such uses result in a disparate impact on African Americans, are not job related for the position in question and consistent with business necessity, and/or do not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

    b.    provide make whole remedial relief to all persons who have suffered individual loss as a result of the discrimination alleged in this Complaint; and

    c.     adopt other appropriate nondiscriminatory measures to correct the present effects of its discriminatory policies and practices, including the use of entry-level firefighter selection procedures that comply with Title VII.

Plaintiff United States prays for such additional relief as justice may require, together with its costs and disbursements in this action.

Dated: October 7, 2024

Respectfully submitted,

| | |
|---|---|
| KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division | SANDRA J. HAIRSTON<br>United States Attorney<br>Middle District of North Carolina |
| KAREN D. WOODARD<br>Chief<br>Employment Litigation Section | LYNNE KLAUER<br>Chief, Civil Division<br>Middle District of North Carolina |
| CLARE GELLER<br>Deputy Chief<br>Employment Litigation Section | |
| */s/ Emily Given*<br>EMILY GIVEN<br>NY Bar No. 5420211<br>ROBERT RICH<br>DC Bar No. 1016908<br>Senior Trial Attorneys<br>Civil Rights Division<br>United States Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br>(202) 532-5696<br>(202) 598-9898 | */s/ Rebecca A. Mayer*<br>REBECCA A. MAYER<br>TX Bar No. 24092376<br>Assistant United States Attorney<br>Middle District of North Carolina<br>101 South Edgeworth Street, 4th Floor<br>Greensboro, NC 27401<br>(336) 333-5351<br>rebecca.mayer@usdoj.gov |

9

Emily.Given@usdoj.gov
Robert.Rich@usdoj.gov

*Counsel for Plaintiff United States of America*