**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>  v.<br><br>CITY OF DURHAM, NORTH CAROLINA,<br><br>       Defendant. | Civil Action No.:  24-cv-838 |

**CONSENT DECREE**

# TABLE OF CONTENTS

I.    BACKGROUND AND STIPULATIONS ................................................................ 1
      A.   Firefighter Selection Process ............................................................. 2
      B.   The Written Examination ..................................................................... 3
      C.   Other ...................................................................................................... 5
II.   DEFINITIONS ..................................................................................................... 5
III.  PURPOSES OF THE CONSENT DECREE ...................................................... 7
IV.   FAIRNESS HEARING ON THE TERMS OF THE CONSENT DECREE .......... 7
      A.   Provisional Entry of this Decree ......................................................... 7
      B.   Claims Administrator ............................................................................ 8
      C.   Notice of Settlement to Applicants ...................................................... 9
      D.   Notice of Settlement to Other Interested Persons and Organizations ........ 10
      E.   Objections to Entry of the Consent Decree ...................................... 12
      F.   Final Entry of the Consent Decree .................................................... 14
V.    GENERAL INJUNCTIVE RELIEF ................................................................... 14
      A.   Injunctions ........................................................................................... 14
      B.   Consent Decree Compliance Officer .................................................. 15
      C.   Development and Use of The Lawful New Selection Device ............. 15
           1.   Work Plan ................................................................................... 17
           2.   Proposal to Use the New Selection Device ............................. 18
           3.   Reporting on Administration of the New Selection Device ...... 19
VI.   INDIVIDUAL RELIEF ...................................................................................... 21
      A.   Two Forms of Individual Relief ......................................................... 21
      B.   Financial Institution and Deposits into a Settlement Fund ............. 21
      C.   Notice of Entry of Consent Decree to Applicants ............................ 21
      D.   Submission of Interest-in-Relief Forms by Potentially Eligible
           Applicants ............................................................................................. 22
      E.   Determination of Claimants' Eligibility for Individual Relief ......... 23
      F.   Monetary Relief .................................................................................... 24
      G.   Priority Hiring Relief .......................................................................... 25
      H.   Proposed Individual Relief Awards List ............................................ 25
VII.  FAIRNESS HEARING ON INDIVIDUAL RELIEF ......................................... 26
      A.   Filing of Proposed Individual Relief Awards List with the Court ............. 26
      B.   Fairness Hearing on Individual Relief ............................................... 26
      C.   Notice of Preliminary Eligibility Determinations to Claimants ......... 27
      D.   Objecting to Individual Relief Determinations ................................. 27
      E.   Filing Objections to Individual Relief ............................................... 28
      F.   Amendment to Preliminary Individual Relief Awards List ............... 29
      G.   Approval of Final Individual Relief Awards List .............................. 29
VIII. EXECUTION OF INDIVIDUAL RELIEF .......................................................... 30
      A.   Notice of Individual Relief Awards and Acceptance and Release ............. 30
      B.   Acceptance of Individual Relief .......................................................... 30

C.     Issuance of Monetary Award Checks by the Claims Administrator ........... 34

D.     Priority Hiring Relief .................................................................................. 37

      1.     Selection Process for Non-Incumbent Claimants Eligible for Priority Hiring Relief ................................................................. 39

      2.     Incumbent Claimants Eligible for Priority Hiring Relief ................... 40

      3.     Offer of Priority Hire ........................................................................ 41

      4.     Retroactive Seniority to Claimants Hired ........................................... 43

      5.     Hiring Bonus for Claimants Hired ...................................................... 44

      6.     City's Reports to the United States on Claimants Hired ..................... 45

E.     Confidentiality of Individual Relief ............................................................ 46

IX.     RECORD KEEPING AND COMPLIANCE MONITORING .............................. 47

X.     DISPUTE RESOLUTION ................................................................................. 48

XI.     DURATION OF THE CONSENT DECREE ...................................................... 48

XII.     COSTS AND FEES ........................................................................................... 49

XIII.     MISCELLANEOUS .......................................................................................... 49

# APPENDICES

**APPENDIX A**       Notice of Settlement and Fairness Hearing

**APPENDIX B**       Objection to the Entry of Consent Decree Form

**APPENDIX C**       Notice of Entry of Consent Decree

**APPENDIX D**       Interest-in-Relief Form

**APPENDIX E**       Notice of Individual Relief Determination and Fairness Hearing on Individual Relief

**APPENDIX F**       Objection to Preliminary Determination on Individual Relief Form

**APPENDIX G**       Notice of Individual Relief Award

**APPENDIX H**       Acceptance of Individual Relief Award and Release of Claims Form

## I. BACKGROUND AND STIPULATIONS

This action was brought by Plaintiff United States of America ("United States") against Defendant City of Durham, North Carolina ("Durham" or "City") to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). This Court has jurisdiction of this action under 42 U.S.C. § 2000e-6(b) and 28 U.S.C. §§ 1331, 1343(a)(3) and 1345.

In its Complaint, the United States alleged that since 2015, the City, through its department, the Durham Fire Department ("DFD"), has unintentionally engaged in a pattern or practice of discrimination against African-American applicants for DFD's entry-level Firefighter position by making hiring decisions based on a written examination that caused a disparate impact on African Americans in violation of Section 703(a)(2) of Title VII, 42 U.S.C. § 2000e-2(k). Specifically, the Complaint alleged that two of the City's uses of the Comprehensive Examination Battery ("CEB"), a written examination developed by Fire and Police Selection, Inc. ("FPSI")—as a pass/fail selection device and as a ranking device to determine which applicants get interviews— each had an unintentional adverse impact on African-American applicants for the entry-level Firefighter job, who disproportionately failed and were disproportionately not offered interviews. The United States further alleged that these practices have not been shown to be job related for the DFD entry-level Firefighter position and consistent with business necessity. The United States did not allege the City intentionally discriminated against African-American applicants. The City denies that it violated Title VII.

1

Nonetheless, the City has expressed a commitment to working with the United States to resolve the allegations in the Complaint.

The United States and the City, desiring that this action be settled by an appropriate Consent Decree ("Decree") and without the burden of protracted litigation, agree to the jurisdiction of this Court over the Parties and the subject matter of this action. The United States and the City further agree to this Decree as final and binding between themselves as to the issues raised in the United States' Complaint in this action. Subject to the Court's approval of this Decree, the Parties waive findings of fact and conclusions of law on all issues, except as to the following, to which the Parties stipulate for the purposes of this Decree, and which the Court finds:

### A.    Firefighter Selection Process

i.     The City maintains the DFD and, through it, employs Firefighters who are responsible for, among other things, providing fire prevention, emergency response, rescue, and hazardous materials services in Durham.

ii.    The City is responsible for the recruitment and hiring of DFD entry-level Firefighters.

iii.   At all relevant times, the City used a multi-step selection process to hire entry-level Firefighters.

iv.    The City's selection process for entry-level Firefighters included a multiple-choice written examination called the Comprehensive Examination Battery ("CEB"). At all relevant times, the City used applicants' scores on the written examination in at least two ways.

2

v.      First, applicants for DFD's entry-level Firefighter position were required to obtain a passing score of 70 percent or better on the written examination to proceed to the other steps in the selection process. Applicants who failed the written examination were removed from further consideration.

vi.     Second, applicants who obtained a passing score of 70 percent or better on the written examination were required to be interviewed to proceed to the other steps in the selection process. In each hiring cycle, the City aimed to interview five times the number of applicants as the number of entry-level Firefighters it sought to hire in that hiring cycle. In hiring cycles for which there were more eligible applicants than interview slots available, the City ranked eligible applicants in order of their scores on the written examination and invited candidates to interview in order of their rank. Applicants who did not receive an invitation to interview were removed from further consideration.

### B.      The Written Examination

vii.    Since 2015, Durham has administered the CEB to all applicants for the DFD entry-level Firefighter position.

viii.   The CEB has included multiple-choice questions on reading ability, math, map reading, writing ability, contextual simulation/human relations, and reasoning skills (which were included for two years).

ix.     Since 2015, African-American applicants passed the written examination at a lower rate than white applicants. The difference between the pass rates of African-

3

American and white applicants is statistically significant at more than 3 units of standard deviation when aggregating the years since 2015.

x.   Since 2015, African-American applicants were offered interviews based on their CEB score at a lower rate than white applicants. The difference between the invitation rates of African-American and white applicants is statistically significant at more than 3 units of standard deviation when aggregating the years since 2015.

xi.   Based on information available to it at the time of filing its Complaint, the United States estimates that at least 16 additional African-American applicants would have been hired by the City as DFD entry-level Firefighters since 2015 absent the unintentional disparate impact of the written examination.

xii.   The United States contends that the City's use of its written examination as a pass/fail screening device was not job related and consistent with business necessity.

xiii.   The United States contends that the City's use of its written examination as a ranking device to determine which candidates are invited to interview was not job related and consistent with business necessity.

xiv.   The City contends its selection and use of the CEB as part of its entry-level hiring process was based on its belief that the CEB was job-related and consistent with business necessity.

4

### C. Other

xv.  Though the Parties stipulate to the foregoing for the purposes of this Decree, the City does not admit to liability under Title VII. In the event the Court does not approve the Consent Decree, the Parties agree that the stipulations herein may not be used in subsequent proceedings to establish the City's liability under Title VII.

xvi.  The relief provided by this Decree does not exceed make-whole relief to individuals who would otherwise have been hired as entry-level Firefighters but for the disparate impact of the practices challenged by the United States.

xvii.  The procedures set forth in this Decree for identifying Claimants and allocating relief among them are fair, adequate, and reasonable, and are not illegal, a product of collusion, or against the public interest.

In resolution of this action, with the agreement of the Parties, IT IS THEREFORE ORDERED AND ADJUDGED as follows:

## II. DEFINITIONS

1.  The "Parties" to this Decree are the United States of America, by the Department of Justice ("United States"), and the City of Durham, North Carolina ("Durham" or "City").

2.  "DFD" means the Durham Fire Department, which is a department of the City of Durham, North Carolina.

3.  "Days" means calendar days unless business days are clearly specified. If any deadline referenced in this Decree should fall on a weekend or federal holiday, the deadline shall be moved to the next business day.

5

4.      "Date of Entry" means the date on which the Court enters the Decree as a final order, at or after the Fairness Hearing on the Terms of the Consent Decree as set forth in Paragraph 32 of this Decree.

5.      The "Challenged Written Exam" means the written examinations that were used by Durham as described in Stipulations iv-viii, specifically the CEB developed by FPSI.

6.      "Claimant" refers to any person who submits an Interest-in-Relief Form.

7.      "Individual Relief" means Monetary Relief and/or Priority Hiring Relief as defined in this Section.

8.      "Monetary Relief" means a monetary award that represents the value of some of the wages that a Claimant would have received from the City if he or she had not been disqualified by the Challenged Written Exam and had been hired into the entry-level Firefighter position for which he or she applied.

9.      "Priority Hiring Relief" means the opportunity for a Claimant to participate in the priority hiring selection process and be hired as a DFD Firefighter with Retroactive Seniority and a Hiring Bonus in Lieu of Pension Credits corresponding to the year he or she would have been hired had he or she not been disqualified by the Challenged Written Exam, or to be credited with Retroactive Seniority and a Proportional Hiring Bonus. Eligibility to participate in the priority hiring selection process does not guarantee a Claimant will receive an offer of priority hire from the City.

6

10. "New Selection Device" means any examination, test, requirement, or other criterion used by the City in place of the Challenged Written Exam to evaluate an applicant's qualifications for hire as an entry-level Firefighter.

## III. PURPOSES OF THE CONSENT DECREE

11. The purposes of this Decree are to ensure that:

    a. The City replaces the Challenged Written Exam with a New Selection Device that promotes its public safety need to hire qualified Firefighters and complies with Title VII; and

    b. The City provides Individual Relief to eligible African-American applicants who were unintentionally excluded from further consideration for employment as entry-level Firefighters with DFD due to the City's uses of the Challenged Written Exam.

## IV. FAIRNESS HEARING ON THE TERMS OF THE CONSENT DECREE

### A. Provisional Entry of this Decree

12. Within fifteen (15) days after the execution of this Decree, the Parties shall file a Joint Motion for the Provisional Approval and Entry of the Decree by the Court and request a Fairness Hearing on the Terms of this Consent Decree to allow the Court to determine whether the terms of the Decree are fair, adequate, reasonable, lawful, and not a product of collusion or against the public interest. The Parties will request that the Court provide notice at least one hundred thirty (130) days before the date and time set for a Fairness Hearing on the Terms of the Consent Decree.

7

13.    The purpose of the Fairness Hearing on the Terms of the Consent Decree and the related notification provisions of this Decree is to provide all persons who may be affected by the terms of the Decree with notice and an opportunity to present objections prior to final entry of the Decree, in accordance with Section 703(n) of Title VII, 42 U.S.C. § 2000e-2(n).

### B.    Claims Administrator

14.    The City shall retain a Claims Administrator to assist the Parties with the notice and claims process. The City shall bear all costs and expenses of the Claims Administrator, which shall be in addition to, and not deducted from, any and all other monetary commitments the City has under this Decree.

15.    No later than twenty (20) days after the Parties file the Joint Motion for the Provisional Approval and Entry of the Decree, as described in Paragraph 12, the City shall enter a contract retaining the Claims Administrator.

16.    The Claims Administrator's contract with the City shall require the Claims Administrator to perform the work outlined in this Decree and to work under the control and supervision of the City in the conduct of its activities. The Claims Administrator's contract shall also require it to report regularly and provide all reasonably requested information to both the United States and the City.

17.    If the United States or the City has reason to believe that the Claims Administrator is not adequately performing the work outlined in this Decree, the United States and the City will meet and confer to find a mutually agreeable course of action to effectuate the adequate performance of the work outlined in this Decree.

8

### C. Notice of Settlement to Applicants

18. No later than one hundred (100) days prior to the Fairness Hearing on the Terms of the Consent Decree, the City shall provide to the Claims Administrator and the United States the last-known mailing address and all known e-mail addresses of each applicant who:

    a. identified as Black, African American, and/or as two or more races when applying for any of the City's selection processes for the entry-level Firefighter position; and

    b. either failed the Challenged Written Exam or failed to receive an invitation to interview as a result of the applicant's score on the Challenged Written Exam.

19. The Claims Administrator shall conduct reasonable additional research to determine if there is a more current address for each applicant described in Paragraph 18.

20. The Claims Administrator will assign an ID number to each of the applicants described in Paragraph 18.

21. No later than eighty (80) days prior to the Fairness Hearing on the Terms of the Consent Decree, the Claims Administrator shall provide to the applicants identified in Paragraph 18 above a copy of the Notice of Settlement and Fairness Hearing in a format substantially similar to APPENDIX A via e-mail to all known e-mail addresses and via first-class U.S. mail to the last-known mailing address.

9

22. The Claims Administrator shall keep records of all Notices that are returned to the Claims Administrator as undeliverable. If any such documents are returned to the Claims Administrator as undeliverable (whether via e-mail or first-class U.S. mail), the Claims Administrator shall promptly notify the Parties and attempt to identify an updated electronic and/or postal mailing address as soon as practicable. If the Claims Administrator or one of the Parties identifies an alternate electronic and/or postal mailing address, the Claims Administrator shall re-send the Notice Documents to the applicant within two (2) business days of receipt of the alternate address. For any documents that are returned to the Claims Administrator as undeliverable after the deadline identified in Paragraph 28 has passed, the Claims Administrator shall promptly notify the Parties, but is not obligated to identify an updated address or re-send the document.

### D. Notice of Settlement to Other Interested Persons and Organizations

23. No later than eighty (80) days prior to the Fairness Hearing on the Terms of the Consent Decree, the City shall provide a copy of the Notice described in Paragraph 21 to:

   a. Each Firefighter currently employed by the City, via hand delivery at the place of the person's employment, by U.S. mail to his or her home address, or as an attachment to or an enclosure with each such person's regularly distributed paycheck; and

   b. The Local 668, the Professional Fire Fighters of Durham, via U.S. mail.

10

24. The City shall publish a Notice of the Settlement and the Fairness Hearing, in a format substantially similar to that contained in APPENDIX A, on the City's website (https://www.durhamnc.gov/), DFD's website (https://www.durhamnc.gov/620/Fire), in the Durham Herald Sun, and via all social media accounts (*i.e.*, Facebook and/or X (formerly Twitter)) that are regularly used by the City and/or the DFD.

25. The notice published on the City's website and DFD's website shall include a publicly-accessible link from which the Notice Documents and the Decree can be accessed. This publicly-accessible link and notice shall be published and remain on the websites for no less than eighty (80) days prior to the Fairness Hearing on the Terms of the Consent Decree.

26. The notice published in the Durham Herald Sun shall be published eighty (80) days prior to the Fairness Hearing on the Terms of the Consent Decree and again sixty (60) days prior to the Fairness Hearing on the Terms of the Consent Decree and shall provide the website address from which the Notice Documents and the Decree can be accessed and the phone number of the Claims Administrator.

27. The notice published via social media shall be published eighty (80) days prior to the Fairness Hearing on the Terms of the Consent Decree and again sixty (60) days prior to the Fairness Hearing on the Terms of the Consent Decree and shall include:

    a. The City shall post on the City's Facebook page (https://www.facebook.com/CityofDurhamNC/) and on DFD's Facebook

11

page (https://www.facebook.com/DurhamFireDepartment/) the following text and a publicly-accessible link from which the Notice Documents and the Decree can be accessed: "The City has entered into a Consent Decree with the U.S. Department of Justice to resolve allegations that the Durham Fire Department's use of a particular written examination in its hiring process unintentionally discriminated against African-American applicants. To learn more, visit: [link]." The City shall not delete these posts prior to the Fairness Hearing on the Terms of the Consent Decree.

b. The City shall post a tweet on the City's X (formerly Twitter) page (@CityofDurhamNC) and on DFD's X page (@durhamcityfire) with the following text and a publicly-accessible link from which the Notice Documents and the Decree can be accessed: "The City has entered into a Consent Decree with the U.S. Department of Justice to resolve allegations that the Fire Department's use of a particular written exam in its hiring process unintentionally discriminated against African-American applicants. Learn more at: [link]." The City shall not delete these tweets prior to the Fairness Hearing on the Terms of the Consent Decree.

### E. Objections to Entry of the Consent Decree

28. A person who wishes to object to the terms of the Consent Decree may do so by submitting to the Claims Administrator an Objection to the Entry of the Consent Decree in a format substantially similar to APPENDIX B by no later than fifty

(50) days before the Fairness Hearing on the Terms of the Consent Decree, or later with good cause for the delay as determined by the United States.

29.   The submission date of each Objection to the Entry of the Consent Decree Form shall be the date on which the form was submitted electronically, e-mailed to the Claims Administrator as determined by the e-mail date stamp, or mailed to the Claims Administrator as determined by the postmark.

30.   No later than forty-five (45) days prior to the date set for the Fairness Hearing on the Terms of the Consent Decree, and on a rolling weekly basis thereafter (if necessary), the Claims Administrator shall serve upon the Parties all objections it has received. The Claims Administrator shall identify the ID number described in Paragraph 20 for any objections that are submitted by applicants described in Paragraph 18.

31.   No later than ten (10) days prior to the Fairness Hearing on the Terms of the Consent Decree:

a.   The United States shall file with the Court all objections received by the Claims Administrator, and, for any objections that are submitted by applicants described in Paragraph 18, will identify them by Claimant ID number and redact all personally identifying information ("PII"), including addresses, telephone numbers, and email addresses, as well as any other information later identified for redaction by the Parties; and

13

b. The Parties shall file their responses, if any, to objections timely received by the Claims Administrator. The Parties' responses will identify individuals by ID number only and will not include any PII.

### F. Final Entry of the Consent Decree

32. The Court shall approve and enter the Decree at or after the Fairness Hearing on the Terms of the Consent Decree if the Court determines that the terms of this Decree are fair, adequate, reasonable, lawful, and not a product of collusion or against the public interest.

## V. GENERAL INJUNCTIVE RELIEF

### A. Injunctions

33. The City, its officials, agents, employees, and successors, and all persons acting on behalf of or in active concert or participation with it, shall comply with 42 U.S.C. § 2000e-2(k) when utilizing a written exam as part of its selection process for entry-level Firefighters.

34. The City, its officials, agents, employees, and successors, and all persons acting on behalf of or in active concert or participation with it, are specifically enjoined from using the Challenged Written Exam.

35. During the term of this Decree, the City shall not administer any written exam for use in selecting entry-level Firefighters without the assent of the United States or, if the Parties cannot reach agreement, approval by the Court pursuant to Paragraph 135.

14

36. The City is enjoined from retaliating against any person because he or she opposed the alleged discrimination at issue in this case, in any way participated in or cooperated with the United States' investigation or litigation of the alleged discrimination at issue in this case, has been involved with the development or administration of this Decree, seeks or receives relief under any provision of this Decree, or objects to the entry of this Decree or the determination of their eligibility for relief under this Decree.

**B.    Consent Decree Compliance Officer**

37. No later than thirty (30) days after the date this Decree is provisionally entered by the Court, the City shall designate a Consent Decree Compliance Officer who may be a City employee.

38. The Compliance Officer shall report quarterly on the status of the implementation of this Decree to the City Attorney's Office and to the United States, through the City Attorney, during the period that this Decree is in effect.

39. The Compliance Officer shall include in these quarterly reports information concerning any complaints of discrimination on the basis of race arising from the City's hiring process for entry-level Firefighters, or retaliation prohibited by Paragraph 36 above, that the City has received.

**C.    Development and Use of The Lawful New Selection Device**

40. The City will adopt and use a Title VII compliant New Selection Device in place of the Challenged Written Exam to hire entry-level Firefighters. In selecting or developing the New Selection Device, the City shall make reasonable efforts to

15

explore the availability of selection devices that have been shown to reduce or eliminate adverse impact upon African Americans in processes for selecting Firefighters.

a. The City will retain a third party to develop the lawful New Selection Device for hiring entry-level Firefighters in place of the Challenged Written Exam ("Test Developer").

b. The City shall bear all costs and expenses of the Test Developer, which shall be in addition to, and not deducted from, any and all other monetary commitments the City has under the Decree.

c. Within thirty (30) days of the Parties tendering the Consent Decree to the Court for provisional approval and entry, the City shall provide the United States with notice of the Test Developer it intends to hire.

d. The lawful New Selection Device must be developed, validated, and used in accordance with Title VII, the Uniform Guidelines on Employee Selection Procedures ("UGESP"), 29 C.F.R. Part 1607, the Principles for the Validation and Use of Personnel Selection Procedures of the Society for Industrial and Organizational Psychologists ("SIOP Principles"), and the terms of this Decree.

e. The City must make the Test Developer available for consultation with the United States, its contractors, and experts throughout the design, development, and validation process within ten (10) days of a request by the United States unless another time period is agreed upon by the Parties.

16

### 1. Work Plan

41. The City will require the Test Developer to prepare a work plan for the development of the lawful New Selection Device that details each stage of the design, development, and validation of the test and that contains estimated timelines for each stage. The work plan will also include a timeline for producing information to the United States, through the City, at particular milestones of the design, development, and validation process (*e.g.* the production of a job analysis) so that the United States can ensure compliance with Paragraph 40.d. The City must submit this work plan to the United States no later than one hundred thirty (130) days after the Parties tender the Consent Decree to the Court for provisional approval and unless the Parties mutually agree in writing to modify this time.

42. The United States shall review the work plan provided and, no later than thirty (30) days after receipt of the work plan, notify the City in writing of any requested modifications or objections to the work plan. If the United States does not notify the City within said time, it waives its right to object to the work plan, unless the Parties mutually agree in writing to modify the time or there is good cause for the United States' delay as determined by the Court.

43. If the United States objects pursuant to Paragraph 42 to the Test Developer's work plan, the Parties and the Test Developer shall within thirty (30) days, unless another period of time is mutually agreed upon in writing, meet and confer to discuss the United States' objection and whether resolution is possible.

44. The United States will review the information produced by the Test Developer pursuant to the work plan agreed upon by the Parties and notify the City of any objections during the development process. If the United States objects to any aspect of the design, development, or validation process pursuant to this Paragraph, the Parties and the Test Developer shall within thirty (30) days meet and confer to discuss the United States' objection and whether resolution is possible.

### 2. Proposal to Use the New Selection Device

45. No less than sixty (60) days before the City administers its New Selection Device, the City shall submit to the United States a proposal to use the New Selection Device for hiring entry-level Firefighters in place of the Challenged Written Exam. This proposal shall include all information available to the City about the development and/or validation of the proposed New Selection Device, except that the City need not reproduce information already made available to the United States through implementation of the work plan as outlined in Paragraph 41. This information includes but is not limited to:

    a. a description of the New Selection Device and the manner in which the City intends to use it (including but not limited to the proposed scoring method, time limit, and requirements to pass any component of the test);

    b. the known, or likely, adverse impact upon African Americans of the intended use of the New Selection Device, if any, including the known or

18

likely adverse impact upon African Americans resulting from the scoring method proposed to be used by the City;

    c.   all evidence of job relatedness or validity of the New Selection Device, including all job analyses, test plans, expert reports, and validation studies, as well as data underlying such analyses, plans, reports, or studies; and

    d.   identification of any alternative selection device(s) that the City considered but did not adopt, and/or any other manner of using the New Selection Device that the City considered but did not adopt, if applicable.

46. No later than thirty (30) days after receiving the proposal and information described in Paragraph 45, above, the United States shall notify the City in writing whether it objects to the City's proposed use of the New Selection Device; otherwise, the City may administer the New Selection Device.

### 3.    Reporting on Administration of the New Selection Device

47. No later than thirty (30) days following the first administration of the City's New Selection Device (and before hiring based on any such selection device) and on an annual basis thereafter for two years, the City shall provide to the United States a list of all applicants who took the City's New Selection Device, including:

    a.   each applicant's race;

    b.   whether they are eligible for Priority Hiring Relief;

    c.   their performance on each item of the City's New Selection Device;

    d.   their raw score(s) on the City's New Selection Device;

    e.   their final score(s) on the City's New Selection Device; and

f.  any pass/fail outcome on the New Selection Device.

48.  In addition to the list of information in Paragraph 47, the City agrees to provide to the United States, upon request, any additional available information relevant to the evaluation of its new hiring process for Title VII compliance.

49.  If the United States determines that the City's use of the New Selection Device does not comply with Title VII and/or this Decree, the United States shall, within forty-five (45) days of receiving the information identified in Paragraph 47 from the City, notify the City in writing that the United States objects to the City's continued use of the New Selection Device and state the basis for any such objection.

50.  If the United States objects pursuant to Paragraph 49 to the City's use of the New Selection Device, the Parties shall, within thirty (30) days of the United States' stating its objection, meet and confer to discuss the United States' objection and whether resolution is possible.

51.  For the duration of this Decree, if the City proposes to replace or change its use of the New Selection Device:

a.  The City shall provide written notice to the United States at least sixty (60) days prior to the intended effective date of the replacement or change, including all information and documentation related to the design, development, and validation of the proposed replacement or change, including, but not limited to, the proposed scoring method and whether

20

such change or modification will have more or less adverse impact on

African Americans than the previous New Selection Device.

b. The United States shall inform the City whether it objects to the proposed

replacement or change no later than thirty (30) days after receipt of the

written notice set forth in Paragraph 51.a. (above).

## VI.   INDIVIDUAL RELIEF

### A.      Two Forms of Individual Relief

52.   The City will provide Individual Relief to eligible Claimants in the form of

Monetary Relief and/or Priority Hiring Relief, including Retroactive Seniority and

Hiring Bonuses in Lieu of Pension Credits, as described further below.

### B.      Financial Institution and Deposits into a Settlement Fund

53.   No later than thirty (30) days after the Date of Entry of this Decree, the City shall

deposit the sum of nine hundred and eighty thousand dollars ($980,000.00) into an

interest-bearing account in a federally insured financial institution.

54.   The City's deposit of nine hundred and eighty thousand dollars ($980,000.00) plus

any interest accrued on those amounts shall constitute the "Settlement Fund" that

shall be used to make Monetary Awards to eligible Claimants pursuant to this

Decree.

### C.      Notice of Entry of Consent Decree to Applicants

55.   No later than thirty (30) days after the Date of Entry of this Decree, the Claims

Administrator shall send a copy of the Notice of Entry of Consent Decree in a

21

format substantially similar to APPENDIX C to each applicant described in Paragraph 18.

56. Such notice shall be sent by e-mail to all known e-mail addresses, if available, and via first-class U.S. mail to the last-known mailing addresses.

57. The Claims Administrator shall keep records of, and, if possible, shall re-send, all Notices returned as undeliverable by the same procedures described in Paragraph 22. For any documents that are returned to the Claims Administrator as undeliverable after the deadline identified in Paragraph 58 has passed, the Claims Administrator shall promptly notify the Parties, but is not obligated to identify an updated address or re-send the document.

**D. Submission of Interest-in-Relief Forms by Potentially Eligible Applicants**

58. Any applicant who wishes to be considered for an award of Individual Relief under this Decree must submit to the Claims Administrator an Interest-in-Relief Form in a format substantially similar to APPENDIX D by no later than seventy-five (75) days after the Date of Entry of this Decree. Any applicant who fails to submit an Interest-in-Relief Form by the deadline shall be deemed to have waived any right to be considered for an award of Individual Relief under this Decree, except for good cause as determined by the United States.

59. The submission date of each Interest-in-Relief Form shall be the date on which the form was submitted electronically, e-mailed to the Claims Administrator as

22

determined by the e-mail date stamp, or mailed to the Claims Administrator as determined by the postmark.

60. No later than eighty-five (85) days after the Date of Entry of this Decree, the Claims Administrator shall provide to the Parties all Interest-in-Relief Forms received by the Claims Administrator, with the ID number indicated. Interest-in-Relief Forms received by the Claims Administrator more than ten (10) days after the deadline for submission of claim forms will be provided to the Parties on a weekly rolling basis.

**E.    Determination of Claimants' Eligibility for Individual Relief**

61. The United States will determine whether a Claimant is eligible for Individual Relief under this Decree, subject to objections and the Court approval process outlined below.

62. A Claimant is eligible for Monetary Relief under this Decree if:

    a.   the Claimant is Black or African American;

    b.   the Claimant either failed the Challenged Written Exam or failed to receive an invitation to interview as a result of the Claimant's score on the Challenged Written Exam; and

    c.   at the time the Claimant was disqualified, the Claimant met the minimum qualifications for employment that were then in place.

63. A Claimant is eligible for Priority Hiring Relief under this Decree if:

    a.   the Claimant satisfies the criteria in Paragraph 62.a.-62.c. above; and

23

b. at the time the Claimant is seeking Priority Hiring Relief, the Claimant meets the minimum qualifications for employment that are then in place.

64. As of the date of the Parties' execution of this Decree, the minimum qualifications for hire as an entry-level Firefighter with DFD remain the same as those in place since January 1, 2015 and are:

   a. Be a permanent U.S. resident;

   b. Be at least 18 years old at the time of Academy entrance;

   c. Have a high school diploma or the equivalent;

   d. Have a valid, unrestricted Class C driver's license;

   e. Have the ability to speak and write in English;

   f. Have no DWI/DUI convictions in the four years preceding Academy entrance;

   g. Have no felony convictions; and

   h. Have the vaccinations required to participate in clinical rotations in hospitals during the EMS portion of the Academy.

**F.    Monetary Relief**

65. The United States shall determine which Claimants are eligible for Monetary Relief under Paragraph 62. In order to be eligible for Monetary Relief, a Claimant need not express an interest in, or be eligible for, Priority Hiring Relief, or accept an offer of employment as an entry-level Firefighter in the DFD.

66. The United States shall determine each eligible Claimant's Monetary Award from the Settlement Fund, such that awards from the Settlement Fund are distributed

24

among all eligible Claimants who sought Monetary Relief, taking into account the date on which each Claimant was first disqualified by the Challenged Written Exam, and for any eligible incumbent Claimants who have since been hired as a DFD Firefighter, the date on which he or she was hired.

### G. Priority Hiring Relief

67. The United States shall determine each Claimant's eligibility for Priority Hiring Relief. Eligibility to participate in the priority hiring selection process does not ensure a Claimant will receive an offer of priority hire from the City. The City shall require all Claimants deemed eligible for Priority Hiring Relief to successfully complete the City's screening and selection procedures that are then in effect and required of all other entry-level Firefighters.

### H. Proposed Individual Relief Awards List

68. No later than one hundred twenty (120) days after the Date of Entry of this Decree, the United States shall provide the City with a Proposed Individual Relief Awards List that identifies by ID number:

   a. all Claimants who timely returned an Interest-in-Relief Form (or who fall within a good cause exception);

   b. the type of relief each Claimant sought;

   c. what, if any, relief the United States finds the Claimant eligible for based on the Interest-in-Relief Forms received by the Claims Administrator and any additional information submitted by the Claimant;

25

d.  if the United States finds the Claimant eligible for Monetary Relief, the amount of Monetary Relief that the United States has determined should be awarded to the Claimant; and

e.  if the United States finds the Claimant ineligible for either type of relief sought, the reason for the United States' determination that the Claimant is not eligible for such relief.

69.  No later than one hundred fifty (150) days after the Date of Entry of this Decree, the City shall notify the United States in writing if it objects to any of the United States' determinations. The Parties shall attempt to resolve any objections submitted by the City to the United States' determinations.

## VII.  FAIRNESS HEARING ON INDIVIDUAL RELIEF

### A.  Filing of Proposed Individual Relief Awards List with the Court

70.  No later than one hundred eighty (180) days after the Date of Entry of the Decree, the United States shall file with the Court and serve upon the City the Proposed Individual Relief Awards List, incorporating adjustments agreed to by the Parties as described in Paragraph 69.

### B.  Fairness Hearing on Individual Relief

71.  Upon filing the Proposed Individual Relief Awards List, the United States shall simultaneously move the Court to hold a Fairness Hearing on Individual Relief to allow the Court to determine whether the Proposed Individual Relief Awards List should be approved or amended. The Court will provide the Parties with at least

one hundred and twenty (120) days' notice of the date and time set for the Fairness Hearing on Individual Relief.

### C.     Notice of Preliminary Eligibility Determinations to Claimants

72.     No later than ninety (90) days before the date set for the Fairness Hearing on Individual Relief, the Claims Administrator shall send to each Claimant who submitted an Interest-in-Relief Form a Notice of Individual Relief Determination and Fairness Hearing on Individual Relief in a format substantially similar to APPENDIX E via e-mail to all known e-mail addresses, if available, and via first-class U.S. mail to the last-known mailing address.

73.     The Claims Administrator shall keep records of, and, if possible, shall re-send, all Notices returned as undeliverable by the same procedures described in Paragraph 22. For any documents that are returned to the Claims Administrator as undeliverable after the deadline identified in Paragraph 74 has passed, the Claims Administrator shall promptly notify the Parties, but is not obligated to identify an updated address or re-send the document.

### D.     Objecting to Individual Relief Determinations

74.     A Claimant who wishes to object to the United States' determination regarding their Individual Relief may do so by submitting an Objection to Preliminary Determination on Individual Relief in a format substantially similar to APPENDIX F by no later than fifty (50) days prior to the date set for the Fairness Hearing on Individual Relief or later with good cause for the delay as determined by the United States.

27

75. The submission date of each Objection to Preliminary Determination on Individual Relief Form shall be the date on which the form was submitted electronically, e-mailed to the Claims Administrator as determined by the e-mail date stamp, or mailed to the Claims Administrator as determined by the postmark.

76. No later than forty-five (45) days prior to the Fairness Hearing on Individual Relief, and on a rolling weekly basis thereafter (if necessary), the Claims Administrator shall serve upon the Parties all objections it has received, with each ID indicated.

   **E.    Filing Objections to Individual Relief**

77. No later than ten (10) days prior to the Fairness Hearing on Individual Relief:

   a. The United States shall file with the Court all objections received by the Claims Administrator, and will identify them by Claimant ID number and redact all PII, including addresses, telephone numbers, and email addresses, as well as any other information later identified for redaction by the Parties; and

   b. The Parties shall file their responses, if any, to objections timely received by the Claims Administrator. The Parties' responses will identify Claimants by ID number only and will not include any PII of the Claimants. In the City's filing, the City may also address its unresolved objections made pursuant to Paragraph 65 in response to the United States' eligibility determinations made pursuant to Paragraphs 61, 62, and 63.

78.     No later than the day of the Fairness Hearing on Individual Relief, the City shall provide the Claims Administrator and the United States with any and all withholding tax forms that the City will require Claimants to complete.

**F.     Amendment to Preliminary Individual Relief Awards List**

79.     At or after the Fairness Hearing on Individual Relief, the Court shall determine which, if any, objections to the Proposed Individual Relief Awards List are well-founded. The Court shall then approve the list as submitted or, if the Court finds that any objections are well-founded, shall request that the Parties make any necessary adjustments to the list consistent with such findings.

80.     The Court will find that an objection to the Proposed Individual Relief Awards List, including an objection to the amount of Monetary Relief to be awarded to a Claimant, is well-founded only if the Court finds that the determination is not fair, adequate, and reasonable, or is otherwise inconsistent with the provisions of this Decree or Title VII.

**G.     Approval of Final Individual Relief Awards List**

81.     If the Court determines that the Individual Relief awards are fair, adequate, and reasonable, the Court shall approve the Individual Relief Awards List as final (the "Final Individual Relief Awards List") at or after the Fairness Hearing on Individual Relief.

## VIII.  EXECUTION OF INDIVIDUAL RELIEF

### A.  Notice of Individual Relief Awards and Acceptance and Release

82.  No later than thirty (30) days after the Court approves the Final Individual Relief Awards List, either at or after the Fairness Hearing on Individual Relief, the Claims Administrator shall provide notice to each Claimant determined by the Court to be entitled to such relief.

83.  The Claims Administrator shall send to each Claimant a Notice of Individual Relief Award in a format substantially similar to APPENDIX G via e-mail to all known e-mail addresses, if available, and via first-class U.S. mail to the last-known mailing address. The Claims Administrator will include a self-addressed return envelope, with postage prepaid, with the Acceptance of Relief Documents provided by first-class U.S. mail.

84.  The Claims Administrator shall keep records of, and, if possible, shall re-send, all Notices that are returned as undeliverable by the same procedures described in Paragraph 22. For any documents that are returned to the Claims Administrator as undeliverable after the deadline identified in Paragraph 85 has passed, the Claims Administrator shall promptly notify the Parties, but is not obligated to identify an updated address or re-send the document.

### B.  Acceptance of Individual Relief

85.  To receive an award of Individual Relief, a Claimant must submit to the Claims Administrator an Acceptance of Individual Relief Award and Release of Claims Form in a format substantially similar to APPENDIX H, along with any applicable

30

withholding tax forms, by no later than sixty (60) days after the Court approves

the Final Individual Relief Awards List, or later with good cause for the delay as

determined by the United States.

86.    The submission date of each Acceptance of Individual Relief Award and Release

of Claims Form shall be the date on which the form was submitted electronically,

e-mailed to the Claims Administrator as determined by the e-mail date stamp or

mailed to the Claims Administrator as determined by the postmark.

87.    Within no more than five (5) business days of the Claims Administrator's receipt

of an Acceptance of Individual Relief Award and Release of Claims Form and any

applicable withholding tax forms, the Claims Administrator shall review the

form(s) to determine whether it is fully executed with the information that is

necessary to effectuate the Claimant's Individual Relief award.

    a.    An Acceptance of Individual Relief Award and Release of Claims Form is

fully executed if the Claimant completes all blanks that require a response

as indicated on the form. A withholding tax form is fully executed based on

whether it can be processed consistent with IRS rules.

    b.    If the form is not fully executed, within no more than seven (7) business

days of the Claims Administrator's receipt of an Acceptance of Individual

Relief Award and Release of Claims Form and any applicable withholding

tax forms, the Claims Administrator shall notify the Claimant via e-mail,

mail, and by telephone, if a telephone number is available, that their

form(s) was not fully executed, providing a clear explanation of how their

31

form was deficient. The Claims Administrator will include any new forms as necessary in the notifications.

   c. The Claims Administrator shall continue to conduct such review of all returned forms and notify Claimants who submitted forms that were not fully executed until the deadline set forth in Paragraph 85.

88. The Claims Administrator shall forward to the Parties all Acceptance of Individual Relief Award and Release of Claims Forms and withholding tax forms it receives on a rolling weekly basis, with all timely forms to be forwarded to the Parties no later than seventy (70) days after the Court approves the Final Individual Relief Awards List.

89. No later than eighty (80) days after the Court approves the Final Individual Relief Awards List, the Claims Administrator shall provide the Parties with a list of all Claimants who submitted Acceptance of Individual Relief Award and Release of Claims Forms and withholding tax forms, identifying which Claimants submitted fully executed forms, as described in Paragraph 87, and which Claimants submitted forms that were not fully executed, and which Claimants did not submit forms at all.

90. No later than one hundred (100) days after the Court approves the Final Individual Relief Awards List, Claimants whose Acceptance of Individual Relief Award and Release of Claims Form and/or any applicable withholding tax forms were not fully executed must provide any missing information and must return fully executed forms. A Claimant's failure to return fully-executed forms by this

32

deadline, absent good cause as determined by the United States, shall constitute a rejection of the offer of Individual Relief and shall release the Parties from any further obligation under the Decree to make an award of Individual Relief to the Claimant. No later than five (5) business days after this deadline, the Claims Administrator shall provide the Parties with all of the returned Acceptance of Individual Relief Award and Release of Claims Forms and any applicable withholding tax forms.

91. No later than one hundred twenty (120) days after the Court approves the Final Individual Relief Awards List, the Claims Administrator shall provide the Parties with an updated list of all of the Claimants who submitted Acceptance of Individual Relief Award and Release of Claims Forms and any applicable withholding tax forms, identifying which Claimants submitted fully-executed forms and which Claimants submitted forms that were not fully executed.

92. If any Claimant listed on the Final Individual Relief Awards List rejects a Monetary Relief award, including by failing to return fully-executed forms as described in Paragraph 90, the United States shall reallocate that amount of Monetary Relief to other Claimants who timely returned all forms required by Paragraph 85, in a way which preserves the relative proportions of the Claimants' shares of the Settlement Fund as stated on the Final Individual Relief Awards List. The United States will not reallocate funds to Claimants in a way which would result in any Claimant receiving more than make-whole relief.

93. No later than one hundred thirty-five (135) days after the Court approves the Final Individual Relief Awards List, the United States shall provide the City and the Claims Administrator with an Amended Final Individual Relief Awards List. The Amended Final Individual Relief Awards List will identify whether each Claimant timely returned all forms required by Paragraph 85 and the amount of Monetary Award to be paid to each Claimant after accounting for the United States' reallocation. The Amended Final Individual Relief Awards List shall also identify each Claimant who is eligible for Priority Hiring Relief.

**C.  Issuance of Monetary Award Checks by the Claims Administrator**

94. No later than one hundred fifty (150) days after approval of the Final Individual Relief Awards List, the Claims Administrator shall mail via first-class U.S. mail with delivery tracking service a Monetary Award check to each Claimant listed on the Amended Final Individual Relief Awards List. The amount of the Monetary Award check shall be the amount shown for the Claimant on the Amended Final Individual Relief Awards List, less all appropriate taxes and other amounts withheld in accordance with Paragraph 95.

95. The City and the Claims Administrator shall coordinate to withhold from each Claimant's Monetary Award all federal, state, and local taxes, and any other amounts that are required to be withheld by law, including appropriate contributions to Medicare and the Social Security fund. The City shall be responsible, either directly or through the Claims Administrator, for remitting the monetary sums and reporting them to the appropriate taxing authorities.

34

96.  The Claims Administrator shall keep records of, and, if possible, shall re-send, all Monetary Award checks returned as undeliverable by the same procedures described in Paragraph 22. For any checks that are returned to the Claims Administrator as undeliverable after the deadline for acceptance of payment identified in Paragraph 99 (one hundred eighty (180) days after issuance of the check) has passed, the Claims Administrator shall promptly notify the Parties, but is not obligated to identify an updated address or re-send the document.

97.  No later than fifteen (15) days after the Claims Administrator mails the Monetary Award checks, the Claims Administrator shall provide to the Parties a statement indicating the amount of the monetary payment made to each Claimant, the amounts withheld from each such Monetary Award check for taxes and other amounts required to be withheld by law, and the purpose of each such withholding.

98.  No later than thirty (30) days after the Claims Administrator mails the Monetary Award checks, the Claims Administrator shall provide to the Parties a list of all Claimants whose Monetary Award payments are still outstanding. The list shall identify which Claimant's checks appear to have been delivered (no returned check) but have not been cashed, and which Claimant's checks have been returned to the Claims Administrator as undeliverable. The Claims Administrator shall also provide a statement of the amount of funds remaining in the Settlement Fund.

99.  No later than thirty (30) days after the Claims Administrator mails the Monetary Award checks, the Claims Administrator shall e-mail and mail a letter to all

Claimants whose Monetary Award payments are still outstanding to inform such Claimants that their awards may be redistributed or otherwise reallocated if they do not accept payment by a specified date one hundred eighty (180) days after issuance of the check.

100. No later than one hundred and forty (140) days after the Claims Administrator mails the Monetary Award checks, the Claims Administrator shall provide to the Parties an updated list of all Claimants whose Monetary Award payments are still outstanding. The updated list shall identify which Claimant's checks appear to have been delivered (no returned check) but have not been cashed, and which Claimant's checks have been returned to the Claims Administrator as undeliverable. The Claims Administrator shall also provide a statement of the amount of funds remaining in the Settlement Fund.

101. No later than one hundred and fifty (150) days after the Claims Administrator mails the Monetary Award checks, the Claims Administrator shall e-mail and mail a letter to all Claimants whose Monetary Award payments are still outstanding to provide such Claimants with final notice that their awards may be redistributed or otherwise reallocated if they do not accept payment by a specified date one hundred eighty (180) days after issuance of the check. The letter shall state that no further warnings regarding such distribution will be given.

102. No later than one hundred ninety (190) days after the Claims Administrator mails the Monetary Award checks, the Claims Administrator shall provide the Parties with a list of all Claimants whose Monetary Award checks were returned as

undeliverable and/or uncashed, as well as a statement of the amount of funds remaining in the Settlement Fund.

103. No later than two hundred (200) days after the Claims Administrator mails the Monetary Award checks, the United States shall inform the City and the Claims Administrator either that: (1) the remaining funds should be reallocated among the other Claimants who are listed on the Amended Final Individual Relief Awards List in a manner that is designed to preserve the relative proportions of the Claimants' shares of the Settlement Fund and consistent with the City's contract with the Claims Administrator, or (2) that reallocation is unnecessary because the United States determines that remaining funds are de minimis.

### D. Priority Hiring Relief

104. From the Claimants on the Amended Final Individual Relief Awards List who are deemed eligible for Priority Hiring Relief, the City shall make up to, but no more than, sixteen (16) Priority Hires, as described further in Paragraph 107.

105. To count as a Priority Hire under this Decree, a Claimant must be eligible for Priority Hiring Relief as indicated by the Amended Final Individual Relief Awards List, and either:

   a. Be hired by the City, by beginning his or her first day of paid employment in the DFD Academy, after receiving an offer of priority hire as described in Paragraphs 109-110 and 116-118, or

37

b.  Be an incumbent DFD Firefighter who is credited with Retroactive Seniority and a Proportional Hiring Bonus as described in Paragraphs 113-115.

106.  Nothing in this Decree shall preclude any Claimant from applying for hire or being hired into the entry-level Firefighter position under any of the City's regular selection processes. The City may not refuse to select or hire a Claimant under one of its regular selection processes because the Claimant is eligible for Individual Relief under this Decree.

107.  The City's priority hiring obligation under this Decree is satisfied when either:

a.  Sixteen (16) eligible Claimants from the Amended Final Individual Relief Awards List have been hired or credited as Priority Hires pursuant to the terms of this Decree; or

b.  All eligible Claimants from the Amended Final Individual Relief Awards List have:

i.  Been hired or credited as Priority Hires pursuant to the terms of this Decree;

ii.  Been disqualified from hire in a manner consistent with the terms of this Decree;

iii.  Rejected an offer of priority hire (including by failing to timely accept an offer of priority hire, absent good cause as determined by the United States); or

38

    iv.  Accepted an offer of priority hire but failed to appear to begin the DFD Academy on the date scheduled without good cause as determined by the United States.

108. Subject to the terms and limitations in this Decree, all individuals selected to be Priority Hires will receive:

    a.  an award of Retroactive Seniority corresponding with the Claimant's retroactive seniority date, as described in Paragraphs 121-123; and

    b.  a hiring bonus in lieu of retroactive pension benefits, as described in Paragraphs 124-127.

### 1. Selection Process for Non-Incumbent Claimants Eligible for Priority Hiring Relief

109. To obtain an offer of priority hire, eligible non-incumbent Claimants must appear for and successfully complete the City's Firefighter screening and selection procedures that are then in effect and required of all other Firefighter applicants.

110. The City must invite eligible non-incumbent Claimants to begin the selection process by providing them with notice (via mail and email if provided) of administration dates for the New Selection Device after the United States provides the City and the Claims Administrator with an Amended Final Individual Relief Awards List. The notice must:

    a.  identify the dates of all upcoming administrations of the New Selection Device that will occur within six months of the date the notice is mailed,

b. be sent at least thirty (30) days prior to the earliest administration date of the New Selection Device identified in the notice, and

c. be updated and re-sent if the City adds any additional test administration dates that will occur within six months of the original notice.

111. The City shall make the same reasonable efforts as it makes with all other applicants to accommodate Claimants in scheduling the screening and selection procedures that are then in effect and required of all other Firefighter applicants.

112. If the City disqualifies any Claimant listed on the Amended Final Individual Relief Awards List based on any part of its screening and selection process before fulfilling its priority hiring obligations under the Decree, the City shall, within ten (10) days of making such determination, send the United States written notice of its determination, the basis of its determination, and any supporting documentation.

### 2. Incumbent Claimants Eligible for Priority Hiring Relief

113. The City may provide Priority Hiring Relief to incumbent DFD Firefighters who meet the eligibility criteria listed in Paragraph 63 by crediting such Firefighters with Retroactive Seniority and a Proportional Hiring Bonus as described in Paragraphs 121-127, subject to the limitation described below in Paragraph 114.

114. The City may credit no more than six (6) eligible incumbent Firefighters with Priority Hiring Relief unless all eligible non-incumbent Claimants meet the conditions described in Paragraph 107.b.

40

115.    The City will notify the United States in writing if it intends to satisfy any part of its priority hiring obligations by crediting eligible incumbent Firefighters with Retroactive Seniority and a Proportional Hiring Bonus, within thirty (30) days of any such award of Priority Hiring Relief, which notice will include the details of the Retroactive Seniority and Hiring Bonus provided.

### 3.    Offer of Priority Hire

116.    The City will provide selected eligible non-incumbent Claimants with a written offer of priority hire upon a Claimant's successful completion of the City's entry-level Firefighter screening and selection procedures that are then in effect and required of all other entry-level Firefighter applicants; provided that, if the offer of priority hire would lead to more than ten (10) Priority Hires being in the same DFD Academy class, the City shall offer to hire additional individuals into the following Academy class.

117.    The City will endeavor to make offers of priority hire as early as possible upon a Claimant's successful completion of the City's entry-level Firefighter screening and selection procedures, so that if a Claimant rejects an offer of priority hire or does not timely respond to an offer of priority hire, the City will have sufficient time prior to the next DFD Academy class to appoint ten (10) Priority Hires. The City will make offers of priority hire at least twenty-eight (28) days before the starting date of the Academy class to which the individual is being invited, unless the Parties mutually agree in writing otherwise.

118. The written offer of priority hire will be sent via first-class U.S. mail and email, and prominently indicate:

   a. that the offer is an offer of priority hire being made pursuant to the Decree;

   b. that the Claimant will be entitled to Retroactive Seniority and a hiring bonus in lieu of pension credits, as provided by this Decree;

   c. the specific starting salary that the City will provide upon graduation from the DFD Academy and the retroactive seniority date used to calculate the other Retroactive Seniority benefits;

   d. the amount of the hiring bonus that the City will provide and when the City will provide those benefits;

   e. the telephone number at which the Claimant may contact the City's Consent Decree Compliance Officer with any questions regarding the offer of priority hire;

   f. the date on which the Claimant will begin Fire academy training if the offer is accepted;

   g. that the Claimant has fourteen (14) days from the date on which the Claimant receives the written offer of priority hire to notify the City that the Claimant accepts the offer; and

   h. that the City will keep the Claimant's designation as a Priority Hire pursuant to this Decree confidential and will not disclose the Claimant's designation as a Priority Hire in any document filed with the Court without a Court order permitting disclosure.

42

119. On the date that such an offer of priority hire is provided to a Claimant, the City shall send a copy of the offer of priority hire to the United States.

120. If a Claimant fails to report to the DFD Academy on the start date identified in the City's offer of priority hire, after accepting the City's offer, then except for good cause as determined by the Parties, the City's obligation to provide the offer to or make a priority hire of that Claimant ceases. However, such instances shall not constitute priority hiring under Paragraph 105 and shall not decrease the number of priority hires that the City must make under Paragraph 104.

### 4. Retroactive Seniority to Claimants Hired

121. On the date on which a Claimant who is hired as a Priority Hire graduates the DFD Academy, or for incumbent Claimants on the date on which they are credited with Priority Hiring Relief, the City shall credit the Claimant with a retroactive seniority date for purposes of calculating the regular rate of pay (and any other types of pay calculated based on the regular rate) and accrual rate for vacation leave.

122. Claimants will not be granted retroactive seniority for purposes of scheduling leave. Retroactive Seniority will not be used to satisfy any applicable probationary periods or any time-in-grade minimums required to be eligible for promotion.

123. The retroactive seniority date credited to a Claimant will correspond to the date associated with the year in which the Claimant was first disqualified by the Challenged Written Exam, as outlined below.

43

| Year First Disqualified | Retroactive Seniority Date |
|---|---|
| 2015 | 2/22/2016 |
| 2016 | 8/21/2017 |
| 2017 | 1/4/2018 |
| 2019 | 4/8/2019 |
| 2020 | 10/5/2020 |
| 2021 | 11/8/2021 |
| 2022 | 8/29/2022 |
| 2023 | 8/28/2023 |
| 2024 | 8/26/2024 |

### 5. Hiring Bonus for Claimants Hired

124. The City shall pay to each Claimant who is hired or credited as a Priority Hire a hiring bonus in lieu of retroactive pension benefits. The amount of the hiring bonus paid to each such Claimant will correspond to the year in which the Claimant was first disqualified by the Challenged Written Exam, as outlined below, subject to the condition that the Claimant is employed with DFD on the date the hiring bonus obligation matures.

| Year First Disqualified | Hiring Bonus |
|---|---|
| 2015 | $17,749 |
| 2016 | $16,295 |
| 2017 | $15,352 |
| 2019 | $13,501 |
| 2020 | $9,744 |
| 2021 | $7,073 |
| 2022 | $4,452 |
| 2023 | $2,000 |
| 2024 | $1,000 |

125. Incumbent Claimants who are credited with Priority Hiring Relief will receive a Proportional Hiring Bonus corresponding to the year in which the Claimant was

44

first disqualified by the Challenged Written Exam, in the amount listed above discounted by the proportion of time between their Retroactive Seniority Date and the Date of Entry of this Decree during which they were employed as a DFD Firefighter.

126. For non-incumbent Priority Hires, hiring bonuses less than seven thousand five hundred dollars ($7,500) shall be paid in one lump sum no later than ten (10) months after the date on which the Claimant graduates from the DFD academy; hiring bonuses more than seven thousand five hundred dollars ($7,500) shall be paid in two lump sums, first in the amount of seven thousand five hundred dollars ($7,500) no later than ten (10) months after the date on which the Claimant graduates from the DFD academy, and second in the amount of the remainder no later than six (6) months after the first payment.

127. For incumbent Priority Hires, proportional hiring bonuses shall be paid in one lump sum on the date on which the Claimant is credited with Retroactive Seniority.

### 6.     City's Reports to the United States on Claimants Hired

128. No later than thirty (30) days after the beginning of any DFD Academy class for which offers of priority hire are made, the City shall provide to the United States a written report identifying:

    a.  the name of each Claimant who was offered a priority hire position;

    b.  whether each such Claimant accepted the offer of a priority hire position;

    c.  whether each such Claimant began the DFD Academy; and

d.  for any Claimant who did not begin the DFD Academy, a statement of the reason(s) that any Claimant was not hired, along with all available documentation relating to such reason(s).

129.   No later than thirty (30) days after the completion of any DFD Academy class for which offers of priority hire have been made, the City shall provide to the United States a written report identifying those Claimants who successfully completed academy training and those who did not successfully complete academy training. For Claimants who successfully complete academy training, the City shall identify whether each Claimant was credited with Retroactive Seniority as provided for in this Decree. For Claimants who did not successfully complete academy training, the report shall include a statement of the reason(s) that the Claimant did not complete academy training, along with all available documentation relating to such reason(s).

### E.   Confidentiality of Individual Relief

130.   The Parties agree that they will keep confidential the PII of any individual who seeks or receives relief under this Decree, including, but not limited to, the identity of individuals designated as Priority Hires pursuant to this Decree. The Parties will not file any document with the Court that identifies the name or other PII of any individual seeking or receiving relief under this Decree absent a court order permitting disclosure.

## IX. RECORD KEEPING AND COMPLIANCE MONITORING

131. While this Decree remains in effect, the City shall maintain all of the following records:

    a. All applications for the entry-level Firefighter position;

    b. All documents related to the use of the New Selection Device in the screening, evaluation, or selection of applicants for the position of entry-level Firefighter, other than documents the City is contractually obligated to return to a test developer after use thereof;

    c. All data and documents relating to the administration of any selection device adopted or utilized pursuant to this Decree;

    d. All documents relating to written or verbal complaints made by any person or organization regarding discrimination on the basis of race arising from the City's use of the New Selection Device to screen applicants for entry-level Firefighter positions, or retaliation prohibited by Paragraph 36 above;

    e. All documents relating to the evaluation, selection, designation, and/or employment of Priority Hires under this Decree; and

    f. All other documents relating to the City's compliance with the requirements of this Decree, including but not limited to documents relating to the payment or award of Individual Relief to any Claimant under this Decree.

132. Except as otherwise provided in this Decree, the City will make available to the United States, no later than thirty (30) days after the United States so requests in

47

writing, any records maintained in accordance with Paragraph 131, and any additional documents relating to any dispute arising under the Decree.

133. When possible, all records furnished to the United States shall be provided in a computer-readable format to be agreed upon by the Parties prior to production.

134. Within thirty (30) days after the United States so requests in writing, the City shall make available in Durham for interview or deposition (at the United States' option) any agent, employee, or official of the City who the United States reasonably believes has knowledge or information necessary to verify the City's compliance with the terms of this Decree or to resolve a dispute arising under this Decree.

## X. DISPUTE RESOLUTION

135. The Parties shall attempt in good faith to resolve informally any disputes that arise under this Decree. If the Parties are unable to resolve the dispute expeditiously, either party may submit the disputed issue to the Court for resolution upon fifteen (15) days written notice to the other party, unless a different time period has been specified elsewhere in the Decree.

## XI. DURATION OF THE CONSENT DECREE

136. Unless extended for good cause by the Court and provided that there are no outstanding disputes being resolved pursuant to Paragraph 135, this Decree shall be dissolved without further order of the Court three (3) years and six (6) months after the Date of Entry described in Paragraph 32, or, if later, upon completion of the following:

48

    a.  Fulfillment of the Parties' obligations regarding General Injunctive Relief set forth in Section V of this Decree;

    b.  Completion of the process for issuance of monetary award checks set forth in Paragraphs 94-103 of this Decree; and

    c.  The passage of thirty (30) days after the City provides the last of the reports regarding Priority Hiring Relief that are required by Paragraphs 115 and 128-129.

## XII.  COSTS AND FEES

137.  The City shall bear all of the costs incurred by the Claims Administrator in the implementation of the Decree, including the cost of all notification and publication procedures required by this Decree.

138.  Other than the payment of costs pursuant to Paragraph 137, each party shall bear its own costs and other expenses incurred as a result of obligations imposed by this Decree.

139.  Each party shall bear its own costs, attorneys' fees, and other expenses incurred in this litigation.

## XIII.  MISCELLANEOUS

140.  The Court shall retain jurisdiction over this Decree for the purpose of resolving any disputes or entering any orders that may be appropriate to implement the Decree until the obligations set forth in Paragraph 136 have been met.

141.  If there is any conflict between this Decree and the requirements of any state or local law or regulation, Federal law and the terms of this Decree shall control.

142. This Decree constitutes the entire agreement of the Parties, and supersedes all prior agreements, representations, negotiations, and undertakings not set forth or incorporated herein.

143. Unless the parties have agreed in writing otherwise, all written information and documents required to be delivered under this Decree to the United States by the City shall be sent via electronic mail to the attorneys of record on this case. To the extent documents are too large to transmit via electronic mail, the City should consult with the United States at least seven (7) business days prior to the relevant deadline to discuss an alternate form of delivery.

144. If any provision of this Decree is found to be unlawful, only the specific provision in question shall be affected, and the other provisions will remain in full force and effect.

145. Final entry of this Decree constitutes the entry of final judgment within the meaning of Rule 54 of the Federal Rules of Civil Procedure as to all claims asserted in this action.

It is so ORDERED, this _____ day of _____, 202_.


_____

JUDGE _____
UNITED STATES DISTRICT JUDGE

Date: October 7, 2024

CONSENTED TO BY:

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

SANDRA J. HAIRSTON
United States Attorney
Middle District of North Carolina

KAREN D. WOODARD
Chief
Employment Litigation Section

LYNNE KLAUER
Chief, Civil Division
Middle District of North Carolina

CLARE GELLER
Deputy Chief
Employment Litigation Section

*/s/ Emily Given*
EMILY GIVEN
NY Bar No. 5420211
ROBERT RICH
DC Bar No. 1016908
Senior Trial Attorneys
Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 532-5696
(202) 598-9898
Emily.Given@usdoj.gov
Robert.Rich@usdoj.gov

*/s/ Rebecca A. Mayer*
REBECCA A. MAYER
TX Bar No. 24092376
Assistant United States Attorney
Middle District of North Carolina
101 South Edgeworth Street, 4th Floor
Greensboro, NC 27401
(336) 333-5351
rebecca.mayer@usdoj.gov

**FOR DEFENDANT CITY OF DURHAM, NORTH CAROLINA:**


*/s/ Wanda Page*
WANDA PAGE
Durham City Manager


This instrument has been preaudited in the manner required by the Local Government Budget and Fiscal Control Act.
*/s/ Tim Flora*
Tim Flora
Finance Officer


Review and approved as to legal form and sufficiency:
*/s/ Kimberly M. Rehberg*
Kimberly M. Rehberg (N.C.S.B. #21004)
City Attorney
101 City Hall Plaza, 2nd Floor
Durham, North Carolina 27701
Telephone: (919) 560-4158
Facsimile: (919) 560-4660
kimberly.rehberg@durhamnc.gov