# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

CITY OF DURHAM, NORTH CARO-
LINA,

*Defendant.*

Case No. 1:24-cv-00838

## AMICUS CURIAE BRIEF OF THE
## AMERICAN ALLIANCE FOR EQUAL RIGHTS

## TABLE OF CONTENTS

Introduction ........................................................................................................................ 1

Background ........................................................................................................................ 2

    I.    The City of Durham uses a race-neutral written exam to evaluate applicants for entry-level firefighter positions.................................................................................. 2

    II.   The U.S. Department of Justice claims that the City's race-neutral exam violates Title VII's disparate-impact provision. ............................................................ 3

    III.  In the proposed consent decree, the City agrees to abandon its race-neutral exam and impose race-based remedies. ........................................................ 4

Argument ........................................................................................................................ 5

    I.    When employers adopt race-based remedies, *Ricci v. DeStefano* requires them to show that their use of race is necessary to avoid disparate-impact liability.............. 7

        A.    *Ricci* requires a strong basis in evidence before employers can use race-based remedies to address alleged disparate impacts. .................................... 8

        B.    The consent decree proposes race-based remedies to address alleged disparate impacts, triggering *Ricci*'s strong-basis standard. ............................ 9

        C.    The parties' arguments why *Ricci* does not apply here fail. ......................... 12

    II.   The parties cannot satisfy *Ricci*'s strong-basis standard. ........................................... 15

    III.  The consent decree also creates the constitutional problem identified by *Ricci*. ... 19

Conclusion ...................................................................................................................... 21

Certificate of Compliance .............................................................................................. 22

Proof of Service .............................................................................................................. 22

## INTRODUCTION[1]

Title VII promises a workplace "free of discrimination." *Ricci v. DeStefano*, 557 U.S. 557, 580 (2009). If that promise means anything, it means employers cannot decide who to hire based on race. *Id.*

But discrimination is exactly what DOJ and Durham want this Court to approve. In their proposed consent decree, the City will no longer use a race-*neutral* exam to evaluate applicants for entry-level firefighter positions. The City will abandon that exam *because* it causes the wrong racial mix of firefighters. And the City will retroactively hire (and pay damages to) individuals who were denied employment based on their score—but *only* if they are black.

These actions are both illegal and wrong. "The way to stop discrimination on the basis of race is to stop discriminating on the basis of race," *Parents Involved v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 748 (2007), not to perpetuate it by having courts bless race-based affirmative-action plans that turn on thin allegations of disparate-impact liability that would never withstand adversarial litigation. That result would itself violate Title VII's bar on intentional discrimination. *See United States v. Brennan*, 650 F.3d 65, 95 (2d Cir. 2011).

The Supreme Court already held as much in *Ricci v. DeStefano*. There, the City of New Haven abandoned its race-neutral written exam for firefighters because it worried that racial disparities in performance created a disparate-impact violation under Title VII. 557 U.S. at 578-79. Recognizing the inherent tension between Title VII's disparate-treatment and disparate-impact provisions, the Court held that the employer couldn't scrap the test without first

---

[1] No counsel for any party authored this brief in whole or in part, and no party or counsel for any party contributed money to fund the preparation or submission of this brief.

1

demonstrating a "strong basis in evidence that," absent the race-based remedy, "it would have been liable under the disparate-impact statute." *Id.* at 563, 583. Keeping with the purpose of Title VII, this rule "limits" an employer's "discretion in making race-based decisions." *Id.* at 583.

This case is *Ricci* redux. Like the City of New Haven, the City of Durham seeks to abandon a race-neutral written exam because of race and to adopt race-based remedies. Like New Haven, then, Durham must show a strong basis in evidence that its exam would have made it liable for disparate impact. That this case involves a consent decree does not alter that obligation. *See Dean v. City of Shreveport*, 438 F.3d 448, 464 (5th Cir. 2006) ("in the eyes of the law," discrimination under a consent decree is no different from discrimination initiated by the employer). The parties have not satisfied their burden under *Ricci*. Based on the record they submitted, the City's written exam is a valid "job-related" mechanism for screening applicants. *See* 42 U.S.C. §2000e-2(k)(1)(A)(i).

The parties' proposal to abandon Durham's exam in favor of race-based hiring "would violate the disparate-treatment prohibition of Title VII." *Ricci*, 557 U.S. at 579. It would also violate the Constitution, which *Ricci* says imposes an even higher burden on public employers like Durham. This Court should not approve the consent decree, preliminarily or otherwise.

## BACKGROUND

### I. The City of Durham uses a race-neutral written exam to evaluate applicants for entry-level firefighter positions.

Durham employs firefighters to handle fire prevention, emergency response, and other services. Doc.2-2 ¶i. Like many cities, Durham uses a written exam as part of a larger "multi-step selection process" to evaluate candidates for entry-level positions. Doc.1 ¶¶12, 16; Doc.2-

2

2 ¶iv; *see, e.g., Get Hired*, N.Y.C. Fire Dep't (archived Jan. 12, 2025), perma.cc/4X9E-FS8A; *Qualifications & Selection Process*, L.A. Fire Dep't (archived Jan. 12, 2025), perma.cc/ALY5-DBVC; *Preparing to Join CFD*, Chicago Fire Dep't (archived Jan. 12, 2015), perma.cc/JGL8-J3CQ (all requiring candidates to pass written exams).

Durham's exam was developed by Fire and Police Selection, an outside consulting firm that specializes in the development of "firefighter testing products to screen applicants for entry-level firefighter positions." Doc.1 ¶16. FPSI created the exam "with the assistance of over 200 fire departments across the country," and the exam "focuses on a number of skills and traits deemed relevant to superior job performance." *Comprehensive Examination Battery (CEB)*, FPSI (archived Jan. 12, 2025), perma.cc/9KMA-78A5. In particular, the exam evaluates a candidate's skill in reading, writing, math, map reading, and interpersonal competency. Doc.1 ¶16. No one here accuses FPSI of racial bias.

Applicants must score at least 70% on Durham's exam to proceed to the next stage. Doc.2-2 ¶v. Applicants who pass that threshold are then offered in-person interviews. Doc.2-2 ¶vi. If the number of applicants who receive a passing score exceeds the number of available interview slots, the applicants are ranked in order of their scores and offered interview slots according to their ranking. Doc.2-2 ¶vi. In each hiring cycle, the City typically interviews five times the number of available slots. In other words, if there were 10 slots available, the City would interview 50 applicants. Doc.2-2 ¶vi.

## II. The U.S. Department of Justice claims that the City's race-neutral exam violates Title VII's disparate-impact provision.

In October of 2024, DOJ filed this action against Durham. According to DOJ, the City's use of a written exam to evaluate applicants for firefighter positions violates Title VII's

3

ban on discrimination in the workplace, Doc.1 ¶¶1, 30-34—even though, as DOJ concedes, the exam is race-neutral, Doc.3 at 4. DOJ alleged that, in prior exams, black applicants have received, on average, lower scores than whites. Doc.1 ¶¶21-26. Black applicants have failed the test at a higher rate and, among those who pass, have been invited for in-person interviews at a lower rate "than white applicants." ¶¶21, 24. This disparity, DOJ claims, is a disparate impact that violates Title VII. ¶¶31-32; *see* 42 U.S.C. §2000e-2(k)(1)(A)(i).

But DOJ's case was over before it started. In its complaint, DOJ requests an injunction ordering the City to refrain from administering the written exam in future hiring cycles, along with "remedial relief" for black applicants who were rejected based on their exam scores in prior cycles. Doc.1 at 8. Yet Durham had already caved and agreed to a draft consent decree before the complaint was filed.

## III. In the proposed consent decree, the City agrees to abandon its race-neutral exam and impose race-based remedies.

The same day that DOJ filed its complaint, the parties filed a proposed consent decree. *See* Doc.2; Doc.2-2. The decree purports to "resolve all of the United States' claims in this action." Doc.3 at 3. The decree restates DOJ's position that the City's use of the written exam violates Title VII's disparate-impact provision. Doc.2-2 ¶¶xii-xiii. The City, for its part, stipulates that the disparity between black and white performance on the exam was "statistically significant." ¶¶ix-x. But it maintains that the exam is "job-related and consistent with business necessity," and it "does not admit to liability under Title VII." ¶¶xiv-xv.

Under the terms of the decree, the City agrees to implement two kinds of "relief." First, it promises to cease administering the exam and not administer any other written exam "without the assent of the United States" or the court. Doc.2-2 ¶¶34-35. The parties are not shy

about why they are dropping the exam: to hire fewer white firefighters and more black fire-fighters. *See* Doc.2-2 ¶40 (promising to implement a new selection device that "reduce[s]" the number of blacks rejected for firefighter positions). Second, the City agrees to "individual relief" in the form of "priority hiring" and monetary awards. Doc.2-2 ¶52. Priority hiring will offer expedited hiring (and retroactive benefits) for individuals who were previously rejected as a result of their score. Doc.2-2 ¶¶9, 104-27. Monetary awards will be made available on the same criteria. Doc.2-2 ¶¶8, 66. But the decree's individual relief is available only for previously rejected applicants who are "Black or African American." Doc.2-2 ¶¶62-63. Individuals of other races who were denied employment based on low exam scores are not offered the same opportunities or benefits.

## ARGUMENT

"[A] district court should not blindly accept the terms of a proposed settlement," and a court's authority to approve consent decrees is limited. *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999). A court should not approve a decree that, for example, is unfair, unreasonable, against the public interest, or ineffective at remedying the alleged violation. *L.J. v. Wilbon*, 633 F.3d 297, 311 (4th Cir. 2011).

Nor can a court enter a consent decree that is contrary to law. "A consent decree has elements of both judgment and contract." *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 280 (4th Cir. 2002). A judicial judgment "must conform to applicable laws." *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990). And parties to a contract cannot "agree to disregard valid … laws." *People Who Care v. Rockford BOE*, 961 F.2d 1335, 1337 (7th Cir. 1992). So a court reviewing a proposed consent decree must, "at a minimum," ensure "the basic legality of the decree,"

5

*SEC v. Citigroup Glob. Mkts.*, 752 F.3d 285, 294-95 (2d Cir. 2014), and confirm that the decree "further[s] the objectives of the law upon which the complaint was based," *Local No. 93, Int'l Ass'n of Firefighters v. Cleveland*, 478 U.S. 501, 525 (1986). A court cannot enforce a consent decree that permits or requires a party to violate the law. *Alexander v. Bahou*, 512 F. Supp. 3d 363, 374 (N.D.N.Y. 2021).

The consent decree here should be rejected because it requires the City to violate Title VII's ban on disparate treatment. Under the decree's terms, the City promises to (1) abandon its race-neutral exam to increase the number of African Americans it hires and (2) offer priority hiring and financial compensation to African Americans—and *only* African Americans—who were previously denied positions based on their scores. *See* Doc.2-2 ¶¶35-69. Because these actions are race-based, they violate Title VII's ban on making employment decisions "because of" race. 42 U.S.C. §2000e-2(a)(1).

In *Ricci*, the Supreme Court identified only one "narrow" circumstance that lets employers implement race-based policies: when necessary to avoid liability under Title VII's disparate-impact provision. 557 U.S. at 583. This limitation "appropriately constrains employers' discretion in making race-based decisions," *id.*, and equally applies to consent decrees, *see NAACP v. N. Hudson Reg'l Fire & Rescue*, 707 F. Supp. 2d 520, 531 (D.N.J. 2010) (*Ricci* "applies whether … the challenged action is initiated by the employer" or "whether the employer is ordered by a court to take the challenged action"). In other words, there is no exception that lets parties agree to discriminate through a consent decree.

*Ricci* therefore governs here, and the parties cannot show a "strong basis in evidence" that the City will be liable for disparate impact if it does not abandon its exam and implement

6

the decree. *Ricci*, 557 U.S. at 563. They have not shown that the City's race-neutral exam violates Title VII. Regardless of any racial disparities in exam scores, the parties have offered *no* "objectively strong evidence" that the exam's content is unrelated to the duties of an entry-level firefighter—a critical element of a Title VII disparate-impact claim. *United States v. Brennan*, 650 F.3d 65, 113 (2d Cir. 2011); *see* 42 U.S.C. §2000e-2(k)(1)(A)(i).

The parties' deficiencies are even more glaring because, as government actors, they must also satisfy the Constitution's guarantee of equal protection (the Fifth Amendment for DOJ and this Court, the Fourteenth Amendment for Durham). Under *Ricci*, public employers must satisfy not only Title VII's ban on disparate treatment but also the Constitution's; and if the strong-basis defense applies to the Constitution at all, then it must be *more* rigorous than under Title VII alone. The parties' shortcomings under Title VII are thus only more fatal under the Constitution. And "[t]he Constitution trumps a consent decree," not the other way around. *Cleveland Firefighters for Fair Hiring Pracs. v. Cleveland*, 669 F.3d 737, 742 (6th Cir. 2012).

The consent decree should not be approved, preliminarily or finally.

## I. When employers adopt race-based remedies, *Ricci v. DeStefano* requires them to show that their use of race is necessary to avoid disparate-impact liability.

In *Ricci*, the Supreme Court held that "any" time an employer wishes to implement race-conscious employment policies to avoid a disparate impact, it must demonstrate the necessity of those policies through a strong basis in evidence. *See* 557 U.S. at 584. If an employer wants to use race, they must show one of those rare and "narrow" situations warranting that approach. *Id.* at 583.

*Ricci* governs this case. The proposed consent decree would discriminate based on race to cure a purported disparate-impact violation. It would adjust the City's hiring criteria for

7

firefighters to hire more black candidates, and it would offer priority hiring opportunities and financial awards to individuals based on their race. Because these actions are race-based, they would violate Title VII's disparate-treatment prong absent a showing that they are necessary to ward off disparate-impact liability.

### A. *Ricci* requires a strong basis in evidence before employers can use race-based remedies to address alleged disparate impacts.

Title VII prohibits two kinds of employment discrimination: disparate treatment and disparate impact. *See* 42 U.S.C. §2000e-2(a), (k); *Ricci*, 557 U.S. at 577-78. The former applies when an employer acts with discriminatory intent by, for example, hiring or firing an employee "because of" race. 42 U.S.C. §2000e-2(a)(1). The latter does not require proof of intent but instead applies when a neutral employment practice "causes a disparate impact on the basis of race." *Id.* §2000e-k(1)(A)(i). In *Ricci*, the Supreme Court addressed the "conflict" between these two theories. 557 U.S. at 580. When an employment practice appears to create a disparate impact based on race, can the employer use a race-conscious policy to remedy that disparate impact, or would that remedy itself run afoul of Title VII's separate prohibition on disparate treatment? *Id.*

*Ricci*'s answer was clear: Though the need to avoid disparate-impact liability might sometimes justify race-based employment practices, it can do so only in "narrow circumstances." *Id.* at 583. Title VII promises a workplace "free of discrimination," and that promise is chiefly expressed in Title VII's bar on disparate treatment—the statute's "original, foundational prohibition." *Id.* at 580-81. An employer's "discretion in making race-based decisions," therefore, must be "appropriately constrai[ned]." *Id.* at 583. An employer can undertake race-

based action only if it has a "strong basis in evidence that, had it not taken the action, it would have been liable under the disparate-impact statute." *Id.* at 563.

*Ricci*'s strong-basis-in-evidence standard applies whenever an employer attempts to justify race-based discrimination as a remedy for disparate impacts. "By its terms, [*Ricci*] applies … to any situation when the demands of Title VII's disparate treatment and disparate impact mandates present conflicting demands." *N. Hudson*, 707 F. Supp. 2d at 531. Put differently, when an employer seeks to engage in conduct that "otherwise would be prohibited disparate-treatment discrimination," they must satisfy *Ricci*'s strong-basis standard. *Ricci*, 557 U.S. at 580. It makes no difference whether the race-based conduct is the employer's idea or DOJ's. If "the federal government made me do it" were a defense, then there would be no tension between the disparate-treatment and disparate-impact provisions of Title VII: Contra *Ricci*, Congress's ban on disparate impacts would be a complete defense to disparate treatment.

**B.  The consent decree proposes race-based remedies to address alleged disparate impacts, triggering *Ricci*'s strong-basis standard.**

The consent decree here proposes two remedial measures: general injunctive relief and individualized relief. *See* Doc.2-2 ¶¶35-69. Both are race-based. The injunction requires the City to eliminate its race-neutral written exam to ensure more black candidates are hired, and the individualized relief is expressly limited to black candidates who were denied employment as a result of their score on the written exam. These measures are, in other words, a form of disparate treatment "because of" race. 42 U.S.C. §2000e-2(a)(1).

Start with the injunctive relief. Under the consent decree, the City promises to cease administering its race-neutral written exam. Doc.2-2 ¶34. And its decision to do so is race-

motivated: It's tossing the exam specifically because the parties are dissatisfied with the performance of black applicants relative to whites. *See, e.g.*, Doc.2-2 ¶¶ix-x (noting the alleged disparate performance on the exam); Doc.3 at 6 (same); Doc.3 at 16-17 (stipulating to the same); Doc.3 at 7 (promising to refrain from "further use of the" exam because it "results in adverse impact on African-American applicants"); Doc.3 at 19-18 (arguing that elimination of the exam is "appropriate" because the exam admits an insufficient number of African American applicants). In its place, the City plans to administer either no exam or a new exam that admits more black applicants relative to whites. *See, e.g.*, Doc.2-2 ¶40 (the City promises to develop a new exam that "reduce[s]" the number of black applicants who fail the exam); Doc.2-2 ¶45(b) (the new exam will be evaluated for its "impact upon African Americans"); Doc.2-2 ¶47 (the City promises to log each applicant's race and their performance on the new exam); Doc.3 at 19 (the City will "replace the [exam] with" a new exam that excludes fewer African Americans).

The City's decision to toss the exam is "race-based." *Ricci*, 557 U.S. at 563. Durham would not be replacing the exam if not for the racial disparity in previous exam scores, and its stated goal in designing a replacement is to increase the number of black hires at the expense of other races. *See SFFA v. Harvard*, 600 U.S. 181, 218-19 (2023) (in "zero-sum" situations like admissions, a "benefit provided to some applicants but not to others necessarily advantages the former group at the expense of the latter"). So absent a "strong basis in evidence" that replacing the exam is necessary to avoid "liab[ility] under the disparate-impact statute," the City's decision is an illegal act of disparate treatment. *Ricci*, 557 U.S. at 563; *see* 42 U.S.C.

§2000e-2(a)(1) (employer engages in disparate treatment where they act "because of" race); §2000e-2(m) ("because of" means race was "a motivating factor" in the employer's decision).

*Ricci* itself involved a city's decision to "discar[d]" a race-neutral written exam for fire-fighters to "achieve a more desirable racial distribution." 557 U.S. at 584. That decision, *Ricci* explains, "discriminate[s] against qualified candidates on the basis of their race" and offends "Title VII's express protection of bona fide promotional examinations." *Id*. Durham makes the same choice here. And in the years since, courts have applied *Ricci*'s standard to other cases where employers abandoned race-neutral employment criteria to recruit more candidates of one race. *E.g.*, *N. Hudson*, 707 F. Supp. 2d at 532 ("throwing out [a] residency requirement in order to 'achieve a more desirable racial distribution' of candidates for hiring" is a "'race-based' remedy").

The decree's individual relief is likewise race-based and triggers *Ricci*'s strong-basis requirement. The decree provides two forms of individualized relief: priority hiring and monetary compensation. Doc.2-2 ¶52. Both turn on race. "Priority hiring" lets an individual who was previously rejected based on his exam score be considered again without regard for that score and, if hired, receive retroactive seniority and a financial bonus. ¶¶9, 104-27. But these individuals must be "Black or African American." ¶¶62-63. Similarly situated individuals of *other* races—say, a white woman who was previously screened out by the written exam—are not eligible. The decree's "monetary relief," meanwhile, is a financial award of at least "some of the wages" that an individual would have received if they had been hired as an entry-level firefighter. ¶¶8, 66. Again, an individual must be "Black or African American." ¶62. Applicants of other races are not eligible.

11

Like the City's decision to scrap its exam, this individualized relief is race-based. Offering employment exclusively to members of a specific racial group, coupled with "retroactive seniority" benefits, is quintessential disparate treatment. *See Brennan*, 650 F.3d at 95, 109 (*Ricci* applied where a city offered such relief to individuals who were previously denied employment because of their performance on a written exam). As are the proposed monetary payments, which are again limited to black individuals who scored too low on the written exam to receive offers of employment. *Compare* Doc.3 at 21 (describing the payments as "make-whole relief"), *with Brennan*, 650 F.3d at 109 ("make-whole relief" to "remed[y] disparate impact … is governed by *Ricci*").

In short, the City's decision to eliminate its current race-neutral exam and its racially exclusive offers of priority hiring and monetary compensation are all race-based employment practices that violate Title VII's ban on disparate treatment. *Ricci* therefore governs, and the parties must show a strong basis in evidence that these remedies are "necessary" to avoid a disparate-impact violation. *Ricci*, 557 U.S. at 584.

### C. The parties' arguments why *Ricci* does not apply here fail.

DOJ and the City, for their part, offer only two brief arguments for why *Ricci* does not govern the proposed decree. They first argue that *Ricci*'s strong-basis-in-evidence standard "does not" apply "to Title VII consent decrees or settlement agreements." Doc.3 at 13 n.2. They next argue that *Ricci* applies when an employer throws out the results of an already-administered exam to avoid disparate-impact liability, but not when an employer modifies hiring practices for "future hiring." Doc.3 at 13 n.2. These arguments are as wrong as they sound.

12

**1.** Discrimination is not shielded from legal review merely because the employer agrees to discriminate as part of a consent decree. In fact, that workaround is exactly what *Ricci* is meant to prevent. The decision aims to "constrai[n] employers' discretion in making race-based decisions." 557 U.S. at 583. And as the Supreme Court has held, there is no "reason to distinguish between voluntary action taken in a consent decree and voluntary action taken entirely outside the context of litigation." *Cleveland*, 478 U.S. at 517. "[I]n the eyes of the law," both are employer-initiated discrimination. *Dean*, 438 F.3d at 464. The fact that an employer agrees ahead of time to discriminate, as part of a consent decree, does not shield the decision. *See Cleveland*, 478 U.S. at 526 (a consent decree "does not render their action immune from attack on the grounds that it violates [Title VII] or the Fourteenth Amendment"); *In re Birmingham Reverse Discrimination Emp. Litig.*, 833 F.2d 1492, 1501 (11th Cir. 1987) (similar). An employer, in other words, may not "agree to take action that conflicts with or violates the statute upon which the complaint was based." *Cleveland*, 478 U.S. at 526.

Indeed, courts regularly review consent decrees for compliance with Title VII's non-discrimination requirements. *See, e.g.*, *Dean*, 438 F.3d at 462-63 (holding that the city's race-conscious hiring process violated Title VII even though the process was adopted to comply with a consent decree requiring an end to discriminatory hiring practices); *Alexander v. Bahou*, 512 F. Supp. 3d at 378 (modifying a consent decree because its practice of using separate eligibility lists for women and African American candidates violated Title VII).

And in the constitutional context, from which *Ricci* borrowed its strong-basis-in-evidence standard, courts have long required public employers to establish a strong basis that

Case 1:24-cv-00838-TDS-JEP    Document 19    Filed 01/15/25    Page 15 of 24

race-based remedial action (*e.g.*, affirmative action) is necessary before approving consent decrees. *Ricci*, 557 U.S. at 582-83; *see, e.g., Ensley Branch, NAACP v. Seibels*, 31 F.3d 1548, 1565 (11th Cir. 1994); *Dean*, 438 F.3d at 452, 455; *Stuart v. Roache*, 951 F.2d 446, 449-50 (1st Cir. 1991); *Davis v. City & Cnty. of San Francisco*, 890 F.2d 1438, 1446-47 (9th Cir. 1989). Like the Equal Protection Clause, Title VII requires employers to balance the elimination of racial disparities against a prohibition on race-based decisionmaking. Because the "same interests" are at work in approving consent decrees, the *Ricci* standard applies here too. *Ricci*, 557 U.S. at 583.

**2.** The parties' distinction between past and future discrimination has no basis in the law either. Start with *Ricci* itself. The Court did not confine its holding to cases of discarded test scores. It "adopt[ed] the strong-basis-in-evidence standard as a matter of statutory construction to resolve *any* conflict between the disparate-treatment and disparate-impact provisions of Title VII." 557 U.S. at 584 (emphasis added). Whenever this "tension" presents itself, *Ricci* governs. *Id.* at 582.

Lower courts have refused to confine *Ricci* in the manner that the parties urge. The Second Circuit, for example, has rejected the view that *Ricci* is "confined to situations involving the discarding of civil service test results based on the disparity those results reflect." *Maraschiello v. Buffalo Police Dep't*, 709 F.3d 87, 95 (2d Cir. 2013); *accord N. Hudson*, 707 F. Supp. 2d at 531 ("Although *Ricci* addressed a disparate treatment challenge to a city's discarding examination results …, *Ricci* is not limited to that factual situation."). Instead, the decision stands for the broader proposition that, absent a "strong basis in evidence that it would otherwise be

14

liable for disparate impact, the employer should not 'upse[t] an employee's legitimate expectation not to be judged on the basis of race.'" *Brennan*, 650 F.3d at 104 (quoting *Ricci*, 557 U.S. at 585).

In short, the consent decree proposes to eliminate a race-neutral exam because its results do not match the DOJ's racial preferences, and to award priority hiring and monetary compensation to previous applicants based on their race. If the City wishes to undertake this "'race-conscious, discriminatory action,'" it must show "'a strong basis in evidence to believe it will be subject to disparate-impact liability.'" *Maraschiello*, 709 F.3d at 95.

## II. The parties cannot satisfy *Ricci*'s strong-basis standard.

That the parties resist the application of *Ricci* tells this Court all it needs to know about their ability to satisfy it. To clear *Ricci*'s hurdle, the parties must provide a strong basis in evidence that the decree's race-based remedies are necessary to avoid disparate-impact liability. They must show both a strong basis that the City's exam would give rise to liability under a disparate-impact theory, and a strong basis that these particular remedies are necessary to avoid that liability. *Ricci*, 557 U.S. at 585; *accord Brennan*, 650 F.3d at 113-14 ("Even after an employer has shown a strong basis in evidence that it faces disparate impact liability, the employer does not have *carte blanche* to take whatever race- or gender-conscious actions it pleases.").

This consent decree fails *Ricci* step one. DOJ and the City cannot show a strong basis in evidence that the City's race-neutral exam violates Title VII's disparate-impact provisions because, regardless of any racial disparities in scores, they have not shown that the exam is not job-related. 42 U.S.C. §2000e-2(k)(1)(A)(i). The City's decision to offer race-based remedies to those who failed the exam is therefore impermissible discrimination. *Ricci*, 557 U.S. at 592.

15

The decree must be denied. *See generally United States v. Duke Energy Carolinas, LLC*, 499 F. Supp. 3d 213, 217 (M.D.N.C. 2020) ("In reviewing the terms of a consent decree, the court may not modify the agreement, but can only accept or reject the terms to which the parties have agreed.").

The parties must show a strong basis in evidence that the City's examination for entry-level firefighters, though race-neutral, violated Title VII's prohibition on disparate impacts. This inquiry is "objective"; the mere fact that an employer fears disparate-impact litigation does not provide a strong basis. *Ricci*, 557 U.S. at 585. Nor does DOJ's "subjective" belief that a disparate impact has occurred. *Id.* Instead, the parties must point to evidence in the record "support[ing] … the conclusion that remedial action is warranted." *Id.* at 582-83 (quoting *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 277 (1986)). And while that evidence need not *prove* the disparate-impact claim, it must be *actual* evidence, not "'amorphous.'" *Id.* at 583; *accord Brennan*, 650 F.3d at 113 (evidence must be "objectively strong").

The parties' arguments supporting the consent decree fail this test. They rest on their stipulation that black candidates have, in other years, passed the exam and received interviews at a "statistically significant" lower rate than white candidates. Doc.3 at 16-17. To start, statistical significance "is not the be-all and end-all of disparate-impact analysis." *Brnovich v. DNC*, 594 U.S. 647, 677 n.17 (2021). There are a "myriad of innocent causes that may lead to statistical imbalances." *Watson v. Ft. Worth Bank & Tr.*, 487 U.S. 977, 992 (1988) (citing 42 U.S.C. §2000e-2(j)). But even accepting the parties' stipulation, "a threshold showing of a significant statistical disparity … is far from a strong basis in evidence that the City would have been liable under Title VII." *Ricci*, 557 U.S. at 587. Disparate-impact liability requires the parties to

16

make the additional showing that the exam was not related to the position. *Id.*; *see* 42 U.S.C. §2000e-2(k)(1)(A)(i). And on that critical point, the parties fall woefully short.[2]

In fact, the parties' (minimal) evidence reveals the opposite: that the City's exam *is* job-related, and that DOJ's "assertions to the contrary are 'blatantly contradicted by the record.'" *Ricci*, 557 U.S. at 587-88. For example, per DOJ's own complaint, the City's exam was designed by an outside consulting firm that specializes in "testing products to screen applicants for entry-level firefighter positions." Doc.1 ¶16. In creating the exam, that firm relied on input from more than 200 different fire departments across the country. *Comprehensive Examination Battery (CEB)*, FPSI (archived Jan. 12, 2025), perma.cc/9kMA-78A5; *see Ricci*, 557 U.S. at 588 (noting, in concluding that a firefighter exam was job-related, that the exam was derived from "source material" provided by the fire department). And the exam covers a range of relevant topics, from "reading" to "math" to "interpersonal competency." Doc.1 ¶16. "[R]eading comprehension, math, and listening comprehension" are "essential" skills for firefighters, who may need to quickly respond to instructions when arriving at an emergency scene or make quick, on-the-spot calculations about things like "water pressure and hose length." *Springfield Branch, NAACP v. Springfield*, 139 F. Supp. 2d 990, 995 (C.D. Ill. 2001).

To prove the test is not job-related, the parties offer little. The complaint generically asserts that the City's exam is "not job related." Doc.1 ¶27. And DOJ claims to have "experts" who "would testify" as much. Doc.3 at 17-18. But the City actually *disagrees* with DOJ on this

---

[2] The parties could also prove that the City refused to adopt a less discriminatory alternative that serves its needs as well as the exam. 42 U.S.C. §2000e-2(k)(1)(A)(ii); *see Ricci*, 557 U.S. at 587. But DOJ did not raise or support that theory in its complaint, consent decree, or motion.

17

point, contending that "its selection and use of the [exam] was based on its belief that the [exam] was job-related and consistent with business necessity." Doc.3 at 18. Needless to say, "a few stray … statements in the record," even from experts supposedly waiting in the wings, cannot satisfy an employer's burden to show a strong basis for liability—especially when the employer itself disputes those statements. *Ricci*, 557 U.S. at 591-92; *see Brennan*, 650 F.3d at 109-10 ("strong basis in evidence" requires "more than a few scattered statements"); *Ricci*, 557 U.S. at 584, 586 (burden is on the employer). No court can "adopt a racial [remedy] that the [defendant] does not, at the time of imposition, judge necessary under a proper interpretation of [the statute]." *Wis. Leg. v. WEC*, 595 U.S. 398, 404 (2022) (cleaned up).

Notably, the parties' arguments for non-job-relatedness are remarkably similar to the arguments that the Court found lacking in *Ricci*. There, as here, the employer used an exam prepared by an outside firm that "specialize[d] in designing entry-level and promotional exam-inations." 557 U.S. at 564, 588. And there, as here, the party arguing disparate impact relied on non-specific statements from a handful of experts. *Id.* at 588, 591-92. At least in *Ricci* the employer provided *actual statements* from experts, rather than simply claiming, as DOJ does here, that experts "would testify" in support of its conclusions. Doc.3 at 17-18. Because New Haven's arguments weren't enough to establish a strong basis for liability in *Ricci*, the parties' similar arguments aren't enough here.

Durham's plan to discard the exam and offer benefits like priority hiring and race-based payments is "impermissible under Title VII." *Ricci*, 557 U.S. at 592. This Court should not place its judicial imprimatur on that intentional racial discrimination.

18

### III. The consent decree also creates the constitutional problem identified by *Ricci*.

Although *Ricci* was resolved on statutory grounds, the decision highlighted the constitutional problem that occurs when a public employer, like Durham, adopts hiring policies "based on race" to cure alleged "past racial discrimination." 557 U.S. at 576-77, 582. The Equal Protection Clause demands an end to "all governmentally imposed discrimination based on race." *Id.* at 582. It "prohibits race … discrimination in public employment." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018).

All racial preferences in public employment must satisfy strict scrutiny. *Adarand Constructors v. Pena*, 515 U.S. 200, 227 (1995). That includes "[r]acial classifications in consent decrees." *Cleveland*, 669 F.3d at 741. And it includes racial remedies that are approved or coerced by the federal government. DOJ is itself barred from imposing racial classifications by the Fifth Amendment. *Adarand*, 515 U.S. at 217. And "if the Federal Government is prohibited from discriminating on the basis of race, then surely it is also prohibited from … mandating that third parties—*e.g.*, employers, whether private, State, or municipal—discriminate on the basis of race." *Ricci*, 557 U.S. at 594 (Scalia, J., concurring). DOJ cannot use the threat of litigation or a consent decree to compel Durham to discriminate. "[T]he Constitution trumps a consent decree." *Cleveland*, 669 F.3d at 742.

The Supreme Court has never held that avoiding disparate-impact liability under Title VII is a compelling interest that could justify a race-based remedy under strict scrutiny. For good reasons. Compliance with a *statute* usually cannot justify violations of *the Constitution*. *Biondo v. Chicago*, 382 F.3d 680, 684 (7th Cir. 2004). Though precedent holds that likely violations of the Voting Rights Act can justify race-based remedies, the Supreme Court has been

19

careful to limit that reasoning to "the Fifteenth Amendment." *Allen v. Milligan*, 599 U.S. 1, 41 (2023). Section 5 of that amendment gives Congress special authority to pass prophylactic legislation to combat racial discrimination in voting. Title VII enjoys no such constitutional foothold; it was passed under the Commerce Clause, not Congress's enforcement authority under §5 of the Fifteenth or Fourteenth Amendments. *EEOC v. Ratliff*, 906 F.2d 1314, 1315-16 (9th Cir. 1990). "If avoiding disparate impact were a compelling governmental interest," moreover, then the principle that the Fourteenth Amendment bars only intentional discrimination "would be undone." *Biondo*, 382 F.3d at 684. Even if Congress could create that regime, Title VII doesn't: The statute denies that disparate impacts can justify preferential treatment for any racial group. *Id.* (citing 42 U.S.C. § 2000e–2(j)).

At a minimum, the Constitution, like Title VII, requires public employers to show a "strong basis in evidence" that a race-based remedy is needed to avoid disparate-impact liability; and that standard is *more* demanding under the Constitution than under Title VII. *Ricci*, 557 U.S. at 582-83. Unlike Title VII, which covers both disparate impacts *and* disparate treatment, the Constitution prohibits only disparate treatment. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). Establishing a strong basis for liability under the Constitution requires a public employer to show that it engaged in intentional discrimination, not just that its hiring practices produced racial disparities. *Brennan*, 650 F.3d at 113. Proving disparate treatment with evidence of disparate impact is a daunting task. *Arlington Heights*, 429 U.S. at 266. Especially here, where the parties haven't provided any persuasive evidence at all. In fact, DOJ affirmatively "does not allege that Durham engaged in intentional discrimination against African-American candidates." Doc.3 at 4; *accord* Doc.2-2 at 5 (same).

20

## CONCLUSION

The Court should reject the proposed consent decree.

Date: January 14, 2025                    Respectfully submitted,

                                          */s/ Gilbert C. Dickey*
                                          Thomas R. McCarthy*
                                          Cameron T. Norris*
                                          Gilbert C. Dickey (NC Bar 58350)
                                          Paul R. Draper*
                                          Consovoy McCarthy PLLC
                                          1600 Wilson Blvd., Suite 700
                                          Arlington, VA 22209
                                          (703) 243-9423
                                          tom@consovoymccarthy.com
                                          cam@consovoymccarthy.com
                                          gilbert@consovoymccarthy.com
                                          paul@consovoymccarthy.com

                                          *pro hac vice forthcoming

                        *Counsel for Amicus Curiae*
                        *American Alliance for Equal Rights*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Local Rules 7.1(a) & 7.3(d) because it is 5,931 words, excluding the parts that can be excluded, and is prepared in a proportionally spaced face using 13-point Garamond font.

*/s/ Gilbert C. Dickey*
Counsel for AAER

## PROOF OF SERVICE

This brief was e-filed on January 14, 2025, along with a motion for leave to file. If that motion is granted, this brief will be e-filed with the Court, notifying by email everyone who needs notice.

*/s/ Gilbert C. Dickey*
Counsel for AAER